UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

SECURITIES AND EXCHANGE COMMISSION, :
                              :
               Plaintiff,      :
                              :
       v.                 :
                              :
AMIT MATHUR,            :     CIVIL ACTION
and ENTRUST CAPITAL MANAGEMENT, INC. :     NO.
                              :
          Defendants,    :
                              :
       and              :     **JURY TRIAL DEMANDED**
                              :
AMR REALTY, LLC         :
                              :
          Relief Defendant.  :

**05 — 10729 MLW**

---

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## PRELIMINARY STATEMENT

1.      During the period starting in September 2001 through the present (the "Relevant Period"), Defendant Amit Mathur ("Mathur") and his investment advisory firm, Defendant Entrust Capital Management, Inc. ("Entrust"), misappropriated at least $3.1 million in advisory client funds for Mathur's personal gain. The misappropriated client money was used, for among other things, to pay personal expenses, to buy a Porsche sports utility vehicle, and to fund several gambling trips. Approximately fifteen clients invested almost $16 million with Mathur and Entrust to fund investments in publicly traded securities and real estate ventures. Mathur and Entrust made material misrepresentations to at least four of those clients about the performance and value of the clients' investments. Mathur, through Entrust, has dissipated nearly all of their

clients' assets through undisclosed trading losses in Entrust's brokerage account, unauthorized use of investor funds to support Entrust's operating expenses, and blatant misappropriation of client funds for personal use. Entrust has only approximately $780,000 in corporate assests remaining from the original $16 million.

2.      Relief Defendant AMR Realty, LLC ("AMR Realty") is a company formed and controlled by Mathur that he uses to make real estate investments for Entrust's clients. Mathur and Entrust transferred at least $1 million in investor funds to AMR Realty. Mathur used those funds to purchase and develop real estate parcels in Worcester, Massachusetts. Rather than safeguarding the proceeds from AMR Realty's real estate sales for the benefit of his clients, Mathur, through AMR Realty, misappropriated hundreds of thousands of dollars for his own personal gain.

3.      By engaging in the conduct alleged in this Complaint, Defendants Mathur and Entrust violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5], and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6 (1) and 80b-6 (2)], and Defendant Mathur has aided and abetted Entrust's violations of Sections 206(1) and 206(2) of the Advisers Act.

4.      Unless restrained and enjoined, Defendants are likely to commit further violations in the future. Accordingly, the Commission seeks: (i) entry of a permanent injunction prohibiting Defendants from further violations of the relevant provisions of the federal securities laws; (ii) disgorgement of Defendants' and Relief Defendant's ill-gotten gains and unjust

## DEFENDANTS

6.      Defendant Mathur, age 34, resides in Shrewsbury, Massachusetts. Mathur is the founder, owner and a principal of Entrust and AMR Realty. During the Relevant Period, Mathur acted as an investment adviser, and as such, Mathur had a fiduciary duty to his advisory clients. In sworn testimony on April 1, 2005 during the Commission's investigation of this matter, Mathur asserted his Fifth Amendment right against self-incrimination in response to all substantive questions, including those relating to: (1) the operations and activities of Entrust and AMR Realty; (2) uses and misappropriation of investor funds by himself, Entrust or AMR Realty; and (3) statements or misrepresentations that he, Entrust or AMR Realty made to investors.

7.      Defendant Entrust is a Massachusetts corporation with offices in Worcester, Massachusetts and West Monroe, Louisiana. Mathur operates the Massachusetts office, while his partner, Rajeev Johar ("Johar"), operates the Louisiana office. During the Relevant Period, Entrust acted as an investment adviser, and as such, Entrust had a fiduciary duty to its clients.

## RELIEF DEFENDANT

8.      Relief Defendant AMR Realty is a Massachusetts limited liability company established by Mathur in July 2003. Mathur owns and controls AMR Realty, and used the company to conduct real estate investments for Entrust's advisory clients. Upon information and belief, AMR Realty appears to be in the business of developing real estate in central Massachusetts.

4

## FACTS

9.  Since September 2001, Mathur, through Entrust, has received approximately $16 million from approximately fifteen clients. Mathur pooled the clients' money, and, among other things, used the funds to invest in marketable securities and to buy and develop real estate. Mathur and Entrust did not maintain separate accounts for their clients' assets, but commingled them in one account.

10.  Entrust and Mathur managed their clients' money for a fee. Entrust's basic fee structure calls for a management fee of 1% of assets under management and a performance fee of 10% of the profits generated.

### Entrust's Investments in Marketable Securities

11.  Entrust purchases and holds marketable securities in a brokerage account at Kimball & Cross Investment Management Corp. ("K&C"), a registered broker dealer. The K&C brokerage account is the only account that Entrust has used to buy and sell securities, including equities and options, since at least September 2001. The K&C brokerage account was where Entrust conducted securities trading for its advisory clients. Between September 2001 and November 2003, Entrust transferred approximately $11.6 million of their clients' funds to the K&C brokerage account from an Entrust corporate bank account at Commerce Bank & Trust Company ("Commerce Bank"), a Massachusetts bank headquartered in Worcester, Massachusetts.

12.  Between January 2002 and March 2005, Entrust's trading of securities in the K&C brokerage account has resulted in losses of Entrust's advisory clients' funds totaling approximately $5.3 million. Entrust's securities trading activities have been unsuccessful over

5

the last three years, generating negative returns on a quarterly basis almost every quarter and double-digit negative returns on an annual basis. Mathur and Entrust hid these losses and the negative performance from at least four of their clients.

13.    As of December 31, 2004, Entrust's K&C brokerage account had an approximate portfolio value of $615,000. By March 31, 2005, the account's value had dropped to approximately $112,000.

14.    Because of Entrust's poor performance in its K&C brokerage account, Entrust made an internal determination to forgo charging management fees to its advisory clients. Because of its poor performance, Entrust was also not eligible to collect any performance fees from its clients.

### Entrust's Real Estate Ventures

15.    Between July 2003 and January 2005, Mathur transferred approximately $1 million of client funds from Entrust's corporate bank account at Commerce Bank to AMR Realty's bank account at Commerce Bank. Mathur used AMR Realty to make real estate investments on behalf of Entrust's advisory clients.

16.    Using Entrust investor funds and bank loans, AMR Realty has purchased at least three properties, all in Worcester, Massachusetts. One of the properties was purchased in June 2003 for $156,000 and sold three months later for $280,000. AMR Realty also purchased a parcel in Worcester on November 5, 2003 and sold at least a portion of that parcel for $258,000 on December 17, 2003. AMR's third transaction was the purchase of property on Wildwood Street, Worcester for $230,000 on September 18, 2003.

6

17.    AMR Realty developed the Wildwood parcel into eight townhouses for sale at approximately $220,000 a unit. AMR Realty placed the townhouses on the market in July 2004 and sold all eight with the closings all occurring in 2005, generating more than $1.7 million in proceeds. Mathur did not receive a salary for his work on the AMR Realty real estate projects and did not charge any fees.

18.    Although Entrust's real estate projects through AMR Realty seem to have resulted in significant profits, rather than safeguarding the proceeds from AMR Realty's real estate sales for the benefit of Entrust's clients, Mathur, through AMR Realty, misappropriated hundreds of thousands of dollars for his own personal gain.

## Entrust and AMR Realty Bank Accounts

19.    Entrust and AMR Realty maintained bank accounts at Commerce Bank in Worcester. Mathur and Entrust commingled their advisory clients' funds with corporate funds in the Entrust and AMR Realty Commerce Bank bank accounts. Mathur treated the Entrust and AMR Realty bank accounts at Commerce Bank as if they were his personal bank accounts. Mathur used the accounts to pay personal expenses, and thereby misappropriated client funds.

## Entrust's and Mathur's Material Misrepresentations to Investors

20.    During the Relevant Period, Mathur and Entrust materially misled at least four clients, David Massad, Philip Massad, Pamela Massad, and Suzanne Benoit (collectively, the "Core Investors"), regarding the performance and value of their investments at Entrust. The Core Investors' combined contributions to Entrust represent more than $15 million of the approximately $16 million in client funds that Mathur has collected at Entrust.

7

21.    On numerous occasions since at least early 2002, Mathur has provided false written and oral statements to the Core Investors indicating that not only has Entrust preserved their principal, but has in fact generated substantial positive returns.

22.    Mathur hid the substantial trading losses that Entrust incurred at K&C and led the Core Investors to believe that the combined worth of their investments at Entrust as of December 31, 2004 was greater than $8 million. In fact, however, Entrust's total combined assets, let alone what they held for the Core Investors, as of December 31, 2004 were substantially less. By April 5, 2005, Entrust's assets had dwindled further, with at most approximately $300,000 in marketable securities and cash equivalents and no more than $480,000 in real estate assets.

## Misrepresentations to David Massad and Philip Massad

23.    During the period of early 2002 through the present, David Massad, a business owner in the Worcester area invested more than $10 million with Mathur at Entrust in several installments. David Massad invested the money with Mathur at Entrust for Mathur to invest on his behalf.

24.    During the Relevant Period, Mathur caused David Massad to receive false and misleading written account statements from Entrust indicating that their principal remained intact and Entrust's investments had generated positive returns when in fact just the opposite was true. The false statements were provided at least on a yearly basis shortly after the end of a calendar year.

25.    During the Relevant Period, David Massad made several redemptions from Entrust totaling approximately $3 million. Based on written and oral statements made by Entrust and Mathur during the Relevant Period, David Massad was fraudulently led to believe that at

year end 2004 his investment with Entrust was worth more than $7 million. Entrust's records show that David Massad's investment was worth at most approximately $1.2 million as of the end of 2004 and in fact had been declining in value during the Relevant Period.

26.    During the period of early 2002 through the present, Philip Massad, also a business owner in the Worcester area made several investments with Mathur at Entrust totaling almost $200,000. Phillip Massad invested the money with Mathur at Entrust for Mathur to invest on his behalf.

27.    Beginning in at least early 2002, Philip Massad received fraudulent periodic account statements from Entrust. The statements all provided false information as to positive return on the investment, the growth in the value of the investment, and the asset allocation. These statements had the heading, Entrust Capital Management, Inc., and generally were accompanied by a letter bearing the signature of Amit Mathur. The letters from Mathur repeated the false return information and made other false statements such as the type of investments that had been made in the past and the allocation of assets. The letters gave the false impression Entrust and Mathur were on track with a methodology designed to preserve the principal and safely generate returns, when in fact Entrust was sustaining heavy losses and dissipating assets through misappropriation.

28.    Entrust and Mathur misrepresented in the statements that they sent to Philip Massad shortly after each year-end in the Relevant Period that they had generated a positive rate of return for his investment of 13.6% in 2002 and 18.07% in 2004. Entrust and Mathur, in their fraudulent statements to Philip Massad, reported that his money was held in equities and options. In fact, during each of these years, Entrust had poor success with its trading of equities and

9

options, realizing substantial negative returns and losing millions of dollars. Philip Massad made investments with Entrust after receiving false and misleading account statements from Mathur and Entrust.

29.     Entrust and Mathur misrepresented to Philip Massad in the statement for the period ended December 31, 2004 that they sent in early 2005 that his investment was worth $348,099.06. Entrust's internal records, however, show that Philip Massad's investment was worth at most approximately $112,000 as of the end of 2004 and in fact had been declining in value during the Relevant Period.

30.     On several different occasions during the Relevant Period, Mathur orally conveyed Entrust's fraudulent performance data to both David Massad and Philip Massad.

31.     Neither David Massad nor Philip Massad authorized Mathur to use their investments for his personal gain or use.

32.     Entrust's and Mathur's representations to David and Philip Massad about the value of their investments at Entrust and the firm's performance were false and misleading. Contrary to the statements made to David and Philip Massad, Entrust did not generate positive returns on their investments during the Relevant Period, but lost a substantial portion of their investments through poor trading and misappropriation.

## Misrepresentations to Pamela Massad and Suzanne Benoit

33.     Pamela Massad and Suzanne Benoit ("Benoit") are attorneys in Worcester, Massachusetts. Pamela Massad invested $400,000 with Mathur at Entrust, making an initial investment of $100,000 in September 2001 and an additional investment of $300,000 in March 2002. Benoit invested $75,000 with Mathur at Entrust, making an initial investment of $25,000

in September 2001, and additional investments of $10,000 in August 2002, $15,000 in October 2003, and $25,000 in January 2004. Pamela Massad and Benoit invested money with Mathur at Entrust for Mathur to invest on their behalf. Both Pamela Massad and Benoit made investments with Entrust after receiving false and misleading account statements from Mathur and Entrust.

34. Beginning in at least early 2002, Pamela Massad and Benoit received fraudulent periodic account statements from Entrust shortly after the end of every calendar quarter by United States mail or facsimile. The statements all provided false information as to positive return on the investment, the growth in the value of the investment, and the asset allocation. These statements had the heading, Entrust Capital Management, Inc., and generally were accompanied by a letter bearing the signature of Amit Mathur. The letters from Mathur repeated the false return information and made other false statements such as the type of investments that had been made in the past and the allocation of assets. The letters gave the false impression Entrust and Mathur were on track with a methodology designed to preserve the principal and safely generate returns, when in fact Entrust was sustaining heavy losses and dissipating assets through misappropriation.

35. In the statements that Entrust and Mathur sent to Pamela Massad shortly after each year-end in the Relevant Period, Entrust and Mathur misrepresented that Entrust had generated a positive rate of return for her investment of 9.61% in 2001, 15.37% in 2002, 23.96% in 2003, and 18.07% in 2004. Entrust and Mathur, in their fraudulent account statements to Pamela Massad, reported that her money was held in equities and options. In fact, during each of these years, Entrust had poor success with its trading of equities and options, realizing substantial negative returns and losing millions of dollars.

reflected in Entrust's corporate bank records. The funds for the mortgage appear to have been clients' money. The Entrust bank records also reveal that tens of thousands of dollars of advisory client funds were spent at jewelry stores, a Porsche dealership, and New England Patriots tickets. In addition, over $300,0000 was used to pay personal or corporate credit card bills.

44.    A substantial portion of the funding for AMR Realty's real estate investments consisted of transfers from Entrust's corporate bank account (and thus consist of Entrust advisory client funds). AMR Realty was supposed to be the entity that Mathur used to make real estate investments for Entrust's clients. Between July 2003 and April 5, 2005, Mathur misappropriated approximately $800,000 from AMR Realty's corporate bank account at Commerce Bank that rightfully belonged to Entrust's advisory clients. Of that amount, approximately $318,000 consisted of checks made out to Amit Mathur and approximately $433,000 consisted of bank and cash withdrawals by Mathur. The AMR Realty corporate bank records also show that over $20,000 was spent at jewelry stores using funds from the AMR Realty account.

## PENALTIES

45.    The violations set forth in this Complaint involve fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement and such violations directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons. Therefore, Defendants Mathur and Entrust are subject to imposition of significant tier three civil penalties for each of the following claims.

14

### FIRST CLAIM FOR RELIEF
### AGAINST MATHUR AND ENTRUST
#### Fraud in the Offer and Sale of Securities
#### [Violation of Section 17(a) of the Securities Act]

46.    The Commission repeats and incorporates by reference the allegations in paragraphs 1-45 of the Complaint as if set forth fully herein.

47.    Mathur and Entrust, directly or indirectly, acting intentionally, knowingly or recklessly, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails: (a) have employed, are employing, and are about to employ devices, schemes or artifices to defraud; (b) have obtained, are obtaining, and are about to obtain money or property by means of untrue statements of material fact or omissions to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) have engaged, are engaging, and are about to engage in transactions, practices or courses of business which operate as a fraud or deceit upon the purchasers of the securities.

48.    As a result, Mathur and Entrust have violated, are violating and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### SECOND CLAIM FOR RELIEF
### AGAINST MATHUR AND ENTRUST
#### Fraud in Connection with the Purchase and Sale of Securities
#### [Violation of Section 10(b) of the Exchange Act and Rule 10b-5]

49.    The Commission repeats and incorporates by reference the allegations in paragraphs 1-45 of the Complaint as if set forth fully herein.

50.    Mathur and Entrust, directly or indirectly, acting intentionally, knowingly or recklessly, by use of the means or instrumentalities of interstate commerce or of the mails, in

15

connection with the purchase or sale of securities: (a) have employed, are employing, and are about to employ devices, schemes or artifices to defraud; (b) have made, are making, and are about to make untrue statements of material fact or have omitted, are omitting, and are about to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) have engaged, are engaging, and are about to engage in acts, practices or courses of business which operate as a fraud or deceit upon certain persons.

51.    As a result, Mathur and Entrust have violated, are violating and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF
## AGAINST MATHUR AND ENTRUST
### Fraudulent Scheme or Device By an Investment Adviser
### [Violation of Section 206(1) of the Advisers Act]

52.    The Commission repeats and incorporates by reference the allegations in paragraphs 1-45 of the Complaint as if set forth fully herein.

53.    Mathur and Entrust, directly or indirectly, acting intentionally, knowingly, or recklessly, by use of the means or instrumentalities of interstate commerce, have employed a device, scheme, or artifice to defraud clients and prospective clients.

54.    As a result, Mathur and Entrust have violated, are violating, and unless enjoined, will continue to violate Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)].

16

## FOURTH CLAIM FOR RELIEF
## AGAINST MATHUR AND ENTRUST
### Fraudulent Transaction, Practice, or Course of Business By an Investment Adviser
### [Violation of Section 206(2) of the Advisers Act]

55.     The Commission repeats and incorporates by reference the allegations in

paragraphs 1-45 of the Complaint as if set forth fully herein.

56.     Mathur and Entrust, directly or indirectly, acting intentionally, knowingly, or

recklessly, by use of the means or instrumentalities of interstate commerce, have engaged in

transactions, practices, or courses of business which operate as a fraud or deceit upon clients or

prospective clients.

57.     As a result, Mathur and Entrust have violated, are violating, and unless enjoined,

will continue to violate Section 206(2) of the Advisers Act [15 U.S.C.§ 80b-6(2)].

## FIFTH CLAIM FOR RELIEF
## AGAINST MATHUR
### Fraudulent Scheme or Device By an Investment Adviser
### [Aiding and Abetting Violation of Section 206(1) of the Advisers Act]

58.     The Commission repeats and incorporates by reference the allegations in

paragraphs 1-45 of the Complaint as if set forth fully herein.

59.     Entrust, directly or indirectly, acting intentionally, knowingly, or recklessly, by

use of the means or instrumentalities of interstate commerce, has employed a device, scheme, or

artifice to defraud clients and prospective clients.

60.     Mathur knew, or was reckless in not knowing, that Entrust's conduct was

improper and he knowingly and substantially assisted Entrust in defrauding clients and

prospective clients.

61.     By reason of the foregoing, Mathur aided and abetted Entrust's violations of

Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)].

## SIXTH CLAIM FOR RELIEF
## AGAINST MATHUR
### Fraudulent Transaction, Practice, or Course of Business By an Investment Adviser
### [Aiding and Abetting Violation of Section 206(2) of the Advisers Act]

62.     The Commission repeats and incorporates by reference the allegations in

paragraphs 1-45 of the Complaint as if set forth fully herein.

63.     Entrust, directly or indirectly, acting intentionally, knowingly, or recklessly, by

use of the means or instrumentalities of interstate commerce, has engaged in transactions,

practices, or courses of business which operate as a fraud or deceit upon clients or prospective

clients.

64.     Mathur knew, or was reckless in not knowing, that Entrust's conduct was

improper and he knowingly and substantially assisted Entrust in engaging in transactions,

practices, or courses of business which operated as a fraud or deceit upon clients or prospective

clients.

65.     As a result, Mathur aided and abetted Entrust's violations of Section 206(2) of

the Advisers Act [15 U.S.C.§ 80b-6(2)].

## SEVENTH CLAIM
### (Unjust Enrichment of Relief Defendant AMR Realty)

66.     The Commission repeats and incorporates by reference the allegations in

paragraphs 1-45 of the Complaint as if set forth fully herein.

18

67.    AMR Realty has no legitimate interest in, or right to, the funds received from Defendants Entrust and Mathur, which are currently being held by it, and therefore, in equity and good conscience, it should not be allowed to retain such funds.

68.    As a result, AMR Realty is liable for unjust enrichment and should be required to return its unjust enrichment, with pre-judgment interest.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that this Court:

A.    Enter a temporary restraining order, order freezing assets and other equitable relief in the form submitted with the Commission's motion for such relief and, upon further motion, enter a comparable preliminary injunction, order freezing assets and other equitable relief.

B.    Enter a permanent injunction restraining Defendants and each of their agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, including facsimile transmission or overnight delivery service, from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect, in violation of:

1.    Section 17(a) of the Securities Act [15 U.S.C. § 17q(a)];

2.    Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and

3.    Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. § 80b-6(1), (2)];

C.    Issue an Order requiring Defendants Mathur and Entrust and Relief Defendant AMR Realty to disgorge all ill-gotten gains and unjust enrichment, plus pre-judgment interest,

19

with said monies to be distributed in accordance with a plan of distribution to be ordered by the

Court;

        D.      Issue an Order requiring Defendants Mathur and Entrust each to pay a civil

penalty in an appropriate amount pursuant to Section 20(d) of the Securities Act [15 U.S.C. §

77(t) (d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u (d)] and Section 209(e) of the

Advisers Act [15 U.S.C. § 80b-9 (e)].

        E.      Retain jurisdiction over this action to implement and carry out the terms of all

orders and decrees that may be entered; and

        F.      Grant such other relief as this Court deems just and appropriate under the

circumstances.

Respectfully submitted,

By: _____

R. Daniel O'Connor  (Mass. Bar No. 634207)
Senior Trial Counsel
oconnord@sec.gov
Steven Y. Quintero  (Mass. Bar No. 632079)
Branch Chief
quinteros@sec.gov
Risa A. King  (Mass. Bar No. 648217)
Enforcement Attorney
kingr@sec.gov

ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
73 Tremont Street, 6th Floor
Boston, Massachusetts 02108
(617) 573-8979 (O'Connor)
(617) 424-5940 (facsimile)

Dated: April 12, 2005

20