# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
:
SECURITIES AND EXCHANGE COMMISSION, :
:
                        Plaintiff,     :
:
                           v.           :
:
AMIT MATHUR, et al             :        CIVIL ACTION
:        NO. 05-cv-10729 MLW
:
                 Defendants.   :
_____:

## THE SEC'S CONSENTED TO MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission" or "SEC") respectfully seeks leave to file an amended complaint in this action. A proposed Amended Complaint is attached as Exhibit A. In support of this motion, the SEC states that the existing Defendants have indicated that they consent to the filing of the Amended Complaint and states further:

### Background

On April 12, 2005, the Commission filed an Emergency Motion for a Noticed Motion For a Temporary Restraining Order, Preliminary Injunction, Order Freezing Assets and Order for Other Equitable Relief ("TRO Motion") alleging that between September 2001 and April 2005, defendants Amit Mathur ("Mathur"), and Entrust Capital Management, Inc. ("Entrust"), an unregistered investment adviser owned by Mathur, misappropriated millions of dollars in investment advisory client funds and made material misrepresentations about the performance and value of clients' investments in violation of the antifraud provisions of the federal securities laws. After a hearing on the Commission's TRO Motion, the Court entered a Temporary

Restraining Order, Order Freezing Assets and Order for Other Equitable Relief.  On April 19,

2005, with Defendants' consent, the Court entered a Preliminary Injunction, Order Freezing

Assets and Order for Other Equitable Relief.

## Argument

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires."

Fed. R. Civ. P. 15(a).  See Foman v. Davis, 371 U.S. 178, 182 (1962) (when the underlying facts

or circumstances relied upon by the plaintiff may be the proper subject of relief, amendment shall

be alleged in the absence of undue delay, bad faith, dilatory motive, or undue prejudice to the

opposing party); Farkas v. Texas Instruments, Inc., 429 F.2d 849, 851 (1st Cir. 1970) (holding

that leave to amend is in the discretion of the court and will be granted in the absence of a

showing of significant delay, bad faith, or prejudice); Bethiaume v. Enterprise Rent-A-Car, 164

F.R.D. 121 (D. Mass. 1995) (holding that the liberal amendment policy of Rule 15(a) allows

amendment when a motion to amend is filed at the "nascent stages of litigation" there is no

showing of delay, bad faith, or dilatory motive).

Here, there is no delay, bad faith or dilatory motive for the Commission's proposed

Amended Complaint, and no unfair prejudice to Defendants.  The Commission provided the

Defendants and the Court  with notice of its intention to likely file an amended complaint in

April and Defendants consent to this filing.  After focusing its efforts on the initial proceedings,

the staff of the SEC continued to investigate matters further and has developed additional

allegations of wrongdoing against the existing Defendants.  The Commission has also

determined that it is proper to name Rajeev Johar, Mathur's business partner at Entrust, as a

defendant.

## Conclusion

Accordingly, for the foregoing reasons, the Securities and Exchange Commission respectfully requests that this Court grant it leave to file the Amended Complaint attached hereto as Exhibit A.

Respectfully submitted,

 /s/ R. Daniel O'Connor
R. Daniel O'Connor, Esq.
(Mass.Bar. No. 634207)
Senior Trial Counsel
oconnord@sec.gov
Steven Y. Quintero, Esq.
(Mass. Bar No. 632079)
Assistant District Administrator
quinteros@sec.gov
Risa A. King, Esq.
(Mass. Bar No. 648217)
Enforcement Attorney
kingr@sec.gov
Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
73 Tremont Street, Suite 600
Boston, MA  02108
(617) 573-8900
(617) 424-5940 (facsimile)

Dated: September 14, 2005

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
                                                    :
SECURITIES AND EXCHANGE COMMISSION, :
                                                    :
                    Plaintiff,        :
                                                    :
          .                       :
                                                    :
AMIT MATHUR, RAJEEV JOHAR,          :        CIVIL ACTION
and ENTRUST CAPITAL MANAGEMENT, INC. :        NO.:  05-cv-10729 MLW
                                                    :
                    Defendants,       :
                                                    :        **JURY TRIAL DEMANDED**
               and                :
                                                    :
AMR REALTY, LLC                   :
                                                    :
                    Relief Defendant.    :
_____:

## FIRST AMENDED COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## PRELIMINARY STATEMENT

1.       During the period starting in October 2000 through the present (the "Relevant

Period"), Defendant Amit Mathur ("Mathur"), Defendant Rajeev Johar ("Johar") and their

investment advisory firm, Defendant Entrust Capital Management, Inc. ("Entrust"), engaged in a

scheme to defraud investors in a purported hedge fund run by Mathur and Johar at Entrust.

Mathur, Johar and Entrust made material misrepresentations to their clients and prospective

clients concerning the number of Entrust's clients, its assets under management, and the returns

that the fund had generated.  Approximately twenty clients placed over $16 million with Mathur,

Johar and Entrust to fund investments in publicly traded securities.   As of April 2005, Entrust

had only approximately $800,000 in corporate assets remaining from the original $16 million.

Mathur and Johar, through Entrust, have dissipated nearly all of their clients' assets through undisclosed trading losses in Entrust's brokerage accounts, unauthorized use of investor funds to support Entrust's operating expenses, and blatant misappropriation of client funds for personal use. The Defendants misappropriated at least $3.6 million in advisory client funds for Mathur and Johar's personal gain. Mathur, Johar and Entrust hid their wrongdoing from investors using a variety of schemes, misrepresentations, and fraudulent business practices.

2.      Relief Defendant AMR Realty, LLC ("AMR Realty") is a company formed and controlled by Mathur that he uses to make real estate investments for Entrust's clients. Mathur and Entrust transferred at least $1 million in investor funds to AMR Realty. Mathur used those funds to purchase and develop real estate parcels in Worcester, Massachusetts. Rather than safeguarding the proceeds from AMR Realty's real estate sales for the benefit of Entrust's clients, Mathur, through AMR Realty, misappropriated hundreds of thousands of dollars for his own personal gain.

3.      By engaging in the conduct alleged in this Complaint, Defendants Mathur, Johar and Entrust violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5], and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6 (1) and 80b-6 (2)], and Defendants Mathur and Johar have aided and abetted Entrust's violations of Sections 206(1) and 206(2) of the Advisers Act.

4.      Unless restrained and enjoined, Defendants are likely to commit further violations in the future. Accordingly, the Commission seeks: (i) entry of a permanent injunction

2

prohibiting Defendants from further violations of the relevant provisions of the federal securities laws; (ii) disgorgement of Defendants' and Relief Defendant's ill-gotten gains and unjust enrichment, plus pre-judgment interest; and (iii) the imposition of civil monetary penalties due to the egregious nature of Defendants' violations.  In addition, because of the risk that Defendants will continue violating the federal securities laws and the danger that any remaining investor funds will be dissipated or concealed before entry of a final judgment, the Commission seeks preliminary equitable relief to:  (i) prohibit Defendants from continuing to violate the relevant provisions of the federal securities laws; (ii) freeze Defendants' and Relief Defendant's assets and otherwise maintain the status quo; (iii) require Defendants and Relief Defendant to submit an accounting of investor funds and other assets in their possession; (iv) prevent Defendants and Relief Defendant from destroying relevant documents; (v) require the repatriation of any and all assets abroad that were obtained or derived from the violative securities transactions; and (vi) prohibit Defendants from continuing to accept or deposit investor funds.

5.      This Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v], Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa], and Section 209 of the Advisers Act [15 U.S.C. § 80b-9].  This Court further has supplemental jurisdiction over the claims against Relief Defendant AMR Realty pursuant to 28 U.S.C. § 1367(a).  The acts and transactions constituting violations occurred primarily within the District of Massachusetts.

## DEFENDANTS

6.      Defendant Mathur, age 34, resides in Shrewsbury, Massachusetts.  Mathur is the founder, owner and a principal of Entrust and AMR Realty.  During the Relevant Period, Mathur

acted as an investment adviser, and as such, Mathur had a fiduciary duty to his advisory clients. In sworn testimony on April 1, 2005 during the Commission's investigation of this matter, Mathur asserted his Fifth Amendment right against self-incrimination in response to all substantive questions, including those relating to: (1) the operations and activities of Entrust and AMR Realty; (2) uses and misappropriation of investor funds by himself, Johar, Entrust or AMR Realty; and (3) statements or misrepresentations that he, Johar, Entrust or AMR Realty made to investors.

7.    Defendant Rajeev Johar, age 37, resides in Louisiana. Johar is a principal of Entrust and controls its West Monroe, Louisiana office. During the Relevant Period, Johar along with Mathur was responsible for and oversaw all trading in Entrust's brokerage accounts. During the Relevant Period, Johar acted as an investment adviser, and as such, Johar had a fiduciary duty to his advisory clients. In an affidavit dated June 24, 2005, Johar asserted his Fifth Amendment right against self-incrimination in response to all substantive questions, including those relating to: (1) the operations and activities of Entrust and AMR Realty; (2) uses and misappropriation of investor funds by himself, Mathur, Entrust or AMR Realty; and (3) statements or misrepresentations that he, Mathur, Entrust or AMR Realty made to investors.

8.    Defendant Entrust is a Massachusetts corporation with offices in Worcester, Massachusetts and West Monroe, Louisiana. Mathur operates the Massachusetts office, while his partner, Johar, operates the Louisiana office. During the Relevant Period, Entrust acted as an investment adviser, and as such, Entrust had a fiduciary duty to its clients.

## RELIEF DEFENDANT

9.    Relief Defendant AMR Realty is a Massachusetts limited liability company

4

established by Mathur in July 2003.  Mathur owns and controls AMR Realty, and used the

company to conduct real estate investments for Entrust's advisory clients.  Upon information and

belief, AMR Realty appears to be in the business of developing real estate in central

Massachusetts.

## FACTS

10.    Since October 2000, Mathur and Johar, through Entrust, have received

approximately $16 million from approximately twenty clients.  Mathur and Johar pooled the

clients' money, and, among other things, used the funds to invest in marketable securities and to

buy and develop real estate.  Mathur, Johar and Entrust did not maintain separate accounts for

their clients' assets, but commingled them together.

### Entrust's Investments in Marketable Securities

11.    Entrust purchased and held marketable securities in brokerage accounts at

Kimball & Cross Investment Management Corp. ("K&C") and AIG Sun America ("Sun

America").  The K&C brokerage account was the primary account in which Entrust conducted

securities trading for its advisory clients.  Between September 2001 and November 2003, Entrust

transferred approximately $11.6 million of their clients' funds to the K&C brokerage account

from an Entrust corporate bank account at Commerce Bank & Trust Company ("Commerce

Bank"), a Massachusetts bank headquartered in Worcester, Massachusetts.  Entrust also received

and later deposited in its Sun America account, approximately $4 million from an individual

investor.  Sun America closed the Entrust account a few months after it was opened, however,

because of excessive trading and other concerns.

12.    Between January 2002 and March 2005, Entrust's securities trading in the K&C

brokerage account resulted in losses of over $5 million of Entrust's advisory clients' funds. Entrust's securities trading activities have been unsuccessful over the last three years, generating negative returns on a quarterly basis almost every quarter and double-digit negative returns on an annual basis.

13.    As of December 31, 2004, Entrust's K&C brokerage account had an approximate portfolio value of $615,000.  By March 31, 2005, the account's value had dropped to approximately $112,000.

14.    Because of Entrust's poor return on its investments, Entrust made an internal determination to forego charging management fees to its advisory clients.  Because of its poor performance, Entrust was also not eligible to collect any performance fees from its clients.

15.    Johar made most of the actual trading decisions in Entrust's brokerage accounts but Mathur was well aware of the activity and losses brought about by trading, and conducted certain trading activity himself.  Entrust, Mathur, and Johar knowingly and/or recklessly hid the trading losses from their clients.

**Entrust's Real Estate Ventures**

16.    Between July 2003 and January 2005, Mathur transferred approximately $1 million in client funds from Entrust's corporate bank account at Commerce Bank to AMR Realty's bank account at Commerce Bank.  Entrust's clients were not informed that their funds would be used to make real estate investments, rather they were led to believe that the funds were to used to make investments in marketable securities (e.g. stocks and options).

17.    Using Entrust investor funds and bank loans, AMR Realty purchased interests in several properties, including three in Worcester, Massachusetts.  One of the properties was

purchased in June 2003 for $156,000 and sold three months later for $280,000. AMR Realty

also purchased a parcel in Worcester on November 5, 2003 and sold at least a portion of that

parcel for $258,000 on December 17, 2003. AMR's third transaction was the purchase of

property on Wildwood Street in Worcester, MA for $230,000 on September 18, 2003.

18.     AMR Realty developed the Wildwood parcel into eight townhouses for sale at

approximately $220,000 a unit. AMR Realty placed the townhouses on the market in July 2004

and sold all eight with the closings all occurring in 2005, generating more than $1.7 million in

proceeds.

19.     Although Entrust's real estate projects through AMR Realty seem to have resulted

in significant profits, rather than safeguarding the proceeds from AMR Realty's real estate sales

for the benefit of Entrust's clients, Mathur, through AMR Realty, misappropriated hundreds of

thousands of dollars for his own personal gain.

### Entrust and AMR Realty Bank Accounts

20.     Entrust and AMR Realty maintained bank accounts at Commerce Bank in

Worcester. Entrust also maintained a bank account at Community Trust Bank in Louisiana.

Mathur had primary control over the accounts at Commerce Bank and Johar had primary control

over the account at Community Trust Bank. Mathur, Johar and Entrust commingled their

advisory clients' funds with corporate funds in the Entrust and AMR Realty bank accounts.

Mathur and Johar treated the Entrust and AMR Realty bank accounts over which they had

authority as if the accounts were their own personal bank accounts.

21.     Entrust, Mathur and Johar managed their clients' money for a fee. Entrust's basic

fee structure called for a management fee of 1% of assets under management and a performance

7

fee of 10% of the profits generated.

22.    Because of poor performance, Entrust waived its management fee of 1% of assets under management, and it failed to earn any performance fees.  Thus, Entrust was not entitled to the use of any its investor funds, even for operating or legitimate business expenses.

### Mathur's Misappropriation of Client Funds for Personal Gain

23.    Nearly all of the money in Entrust's corporate account at Commerce Bank came from client deposits.  As described above, the same is true for most of the money in AMR Realty's corporate account at Commerce Bank.  Between September 2001 and April 5, 2005, Mathur misappropriated at least $3.2  million from Entrust's and AMR Realty's corporate bank accounts at Commerce Bank for his own personal gain in hundreds of transactions.  Mathur took approximately $2.1 million of the total amount misappropriated through: (1) cash withdrawals by Mathur; (2) checks made out to Amit Mathur; (3) automatic teller machine ("ATM") withdrawals by Mathur; and, (4) transfers to other accounts controlled by Mathur.  Mathur took another $337,000 to fund gambling activities through direct payments to casinos or in the form of ATM withdrawals at the Foxwoods and Mohegan Sun casinos in Connecticut, and other casinos in Atlantic City and Las Vegas.  Mathur used $340,000 of his clients' money to make payments to credit card companies.  Mathur misappropriated approximately $101,000 to make car-related payments, including the purchase of a 2004 Porsche Cayenne SUV.  Mathur took another $34,000 to purchase Patriots season tickets and gave almost $30,000 to various ticket brokers for tickets to other events.  Mathur spent $47,000 of his clients' money in jewelry stores, $19,000 making charitable contributions, $11,700 on clothes, and $8,500 on his pool service.  Mathur misappropriated the remainder of the over $3.2 million by making other unauthorized payments

for his own personal gain.

24.    Mathur also received a $340,000 loan from Entrust using client funds secured by a mortgage on his personal home.  Johar as president of Entrust, later discharged Mathur's mortgage, but there is no record of repayment reflected in Entrust's corporate bank records.

### Johar's Misappropriation of Client Funds for Personal Gain

25.    Between September 2001 and April 2005, Johar misappropriated approximately $450,00 in investor funds from Entrust's Louisiana bank account at Community Trust Bank for his personal gain.   Johar took approximately $150,000 of the total amount misappropriated through: (1) cash withdrawals by Johar; (2) checks made out to Johar; and, (3) transfers to other accounts controlled by Johar.   Johar used $103,000 of his clients' money to make payments to credit card companies. Johar misappropriated approximately $16,800 to make car-related payments.  Johar spent $23,000 of his clients' money in jewelry stores, $11,000 was paid out to a country club, $4,000 was spent on clothing, and $900 was used making charitable contributions. Johar misappropriated the remainder of the $450,000 by making other unauthorized payments for his own personal gain.

### Mathur's and Johar's Secret Commission Kickback Deal

26.    Entrust, Mathur and Johar also failed to disclose a secret arrangement with Entrust's broker at K&C, whereby the broker agreed to kickback 90% of the commissions that he received by virtue of Entrust's trades with K&C.   According to the secret agreement, the K&C broker assigned to the Entrust account, Robert Zanotti, sent Mathur and Johar checks on an almost monthly basis that represented their share of 90% of Entrust commissions received by the broker.  The kickback checks were often deposited in to Entrust's bank accounts and dissipated

as described herein.  On certain occasions, Mathur directed Zanotti to withhold the monthly

payments and to use the money to purchase goods in Zanotti's name and to pay expenses for

Mathur's benefit.  Once such purchase included  a Mercedes sports car.   Any return of

commissions should have been held for the benefit of Entrust's clients.

## Defendant's Material Misrepresentations to Investors

27.     During the Relevant Period, Mathur, Johar and Entrust materially misled investors

regarding the performance, value, and composition of their investments at Entrust.

28.     Mathur, Johar and Entrust also made material misrepresentations to their clients

and prospective clients concerning the number of clients, the amount in assets under

management, and historical returns generated at Entrust.

29.     On numerous occasions during the Relevant Period, Mathur and Johar provided

false written and oral statements to the investors indicating that not only had Entrust preserved

their principal, but in fact the firm had generated substantial positive returns when they knew, or

were reckless in not knowing that in fact the clients had lost substantial money.   During the

Relevant Period, Entrust, Mathur, and Johar sent their clients periodic account statements,

typically on a quarterly or monthly basis, that always showed a false positive return.

30.     On numerous occasions during the Relevant Period, Mathur, Johar, and Entrust

made payments to certain clients that were supposed to represent a return of some or all of their

investments and/or purported profits, when in fact the payments were made using funds provided

by other investors.

31.     Mathur, Johar and Entrust also provided clients with false and misleading tax

documentation that inaccurately reported capital gains.  On information and belief, Mathur and

Johar knowingly caused Entrust to file false tax returns with the Internal Revenue Service during the Relevant Period as part of their scheme to defraud investors.

32.    Entrust, Mathur and Johar hid the substantial trading losses that they incurred and led their investors to believe that the combined worth of their investments at Entrust as of December 31, 2004 was well over $10 million.  In fact, however, Entrust's total combined assets as of December 31, 2004 were substantially less than $2 million.  By April 5, 2005, Entrust's assets had dwindled further, with approximately $300,000 in marketable securities and cash equivalents and no more than $500,000 in real estate assets held in constructive trust at AMR Realty.

## Misrepresentations to David Massad

33.    During the period of October 2000 through the present, David Massad, a business owner in the Worcester area invested $14.7 million with Mathur at Entrust in several installments.

34.    Between October 2001 and November 2003, David Massad provided $5.87 million to Johar and Mathur at Entrust for investment in the firm's hedge fund.  During the Relevant Period, Entrust, and Mathur mailed and/or hand delivered to David Massad account statements related to the $5.87 million investment on an almost monthly basis.  The statements all provided false information as to a positive return on the investment, the growth in the value of the investment, and the asset allocation. These statements had the heading Entrust Capital Management, Inc., and generally were accompanied by a letter bearing the signature of Amit Mathur.  The letters from Mathur repeated the false return information and made other false statements such as the type of investments that had been made in the past and the allocation of

11

assets.  The letters gave the false impression that Entrust, Johar and Mathur were on-track with a

methodology designed to preserve David Massad's investment principal and safely generate

returns, when in fact Entrust was sustaining heavy losses and dissipating assets through

misappropriation.  For example, the account statement for the period ending June 30, 2004

falsely showed that the investment account had gained more that $623,000 on the year and was

worth more than $7.35 million.  Entrust, Mathur, and Johar knew or recklessly disregarded the

fact, however, that Entrust's trading for the same period resulted in double-digit negative returns

and losses of more than $3 million.   Mathur also made oral misrepresentations to David Massad

as to the success of his investments on numerous occasions during the Relevant Period.

     35.     During the summer of 2003, David Massad invested $8.8 million with Johar,

Mathur and Entrust for the purpose of buying specified numbers of shares of preferred stock of

the General Motors Corp. ("GM") and the Ford Motor Company ("Ford").  The investment was

made in four installments as follows: (1) $4,024,000 on or about June 11, 2003 to buy 160,000

preferred shares of GM; (2) $1,006,000 on or about June 24, 2003 to buy 40,000 preferred shares

of GM; (3) $2,755,5000 on or about July 22, 2003 to buy 110,000 preferred shares of Ford; and

(4) $1,002,000 on or about August 6, 2003, to buy 40,000 preferred shares of Ford.

     36.     Mathur and Entrust agreed that the GM and Ford stock was to be held separately

from the hedge fund investment and it was expected that the GM shares would generate a

quarterly dividend of approximately $91,250 and the Ford shares would generate a quarterly

dividend of $69,000.  Entrust and Mathur agreed to pay out the quarterly dividends to David

Massad shortly after receipt.

     37.     Soon after receiving the funds, Entrust and Mathur sent David Massad false

statements confirming that the GM shares had been purchased as requested.  On a quarterly basis between September 2002 and January 2005, Entrust, Mathur and Johar caused David Massad to receive six checks, each in the amount of the expected GM dividends, $92,150, totaling $547,500.

38.     Contrary to David Massad's explicit instructions, however, the specified number of shares of GM stock were not purchased. Approximately $4 million of $5 million that David Massad instructed Mathur and Entrust to use to purchase GM shares was commingled with other investors money and dissipated thorough undisclosed trading activities and misappropriation as described herein.  Entrust, Mathur, and Johar caused the GM "dividend checks" to be sent to David Massad on a quarterly basis in the expected amount, $92,150, so as to trick him into believing that the investment had been made as instructed.  Entrust, Mathur, and Johar knew that the actual the quarterly dividend generated by the GM shares was much less than the expected $91,250 because only $1 million of the $5 million GM investment was executed.  Moreover, Entrust, Mathur, and Johar caused false income tax schedules to be sent to David Massad for the year ending 2003 that counted the false GM dividend payments at the full $91,250 per quarter amount as income requiring taxes to be paid thereon.

39.     Starting in July 2004, Entrust, Mathur and Johar, without permission of David Massad, started selling David Massad's GM and Ford shares.  The proceeds from the sales were commingled with other investors money and dissipated thorough undisclosed trading activities and misappropriation as described herein and/or used to fund a payment to David Massad that was supposed to come out of the moneys that he had invested in Entrust's hedge fund.   By the end of January 2005, Entrust held only a few thousand shares of GM and Ford as opposed to the

13

200,000 shares of GM and 150,000 shares of Ford that Entrust represented to David Massad it

had purchased and held separately for his benefit.   Entrust, Mathur, and Johar caused the GM

and Ford "dividend checks" to be sent to David Massad on a quarterly basis in the expected

amounts even after the shares had been sold, so as to trick David Massad into believing that the

investment continued to exist as previously indicated even though they knew that the shares had

been sold.

### Misrepresentations to Other Investors

40.     Alok Mathur is a relative of Mathur's mother.  Alok Mathur invested $530,000

with Mathur, making an initial investment in November 2003 of $400,000.  In April 2004, after

receiving false statements about the positive return supposedly generated on his initial

investment, Alok Mathur made a second investment of $130,000.  Alok Mathur invested his

money with Mathur at Entrust for Mathur and Johar to invest on his behalf through Entrust.

Beginning shortly after he made his initial investment, Alok Mathur started receiving misleading

periodic account statements from Entrust, Mathur and Johar that knowingly or recklessly

provided false information as to a positive return on the investment, the growth in the value of

the investment, and the asset allocation.  For example, the December 31, 2004 statement that

Entrust sent to Alok Mathur falsely stated that his account had achieved a 14.1% return over the

year and had grown in value to $698,198.36.  Entrust, Mathur, and Johar knew or recklessly

disregarded the fact, however, that Entrust's trading for the same period resulted in a negative

65% return and losses of more than $3.7 million.  Entrust, Mathur, and Johar also caused false

income tax schedules to be sent to Alok Mathur for the years ending 2003 and 2004 that showed

the fabricated investment gains as income requiring taxes to be paid thereon.  Mathur and Johar

14

also provided oral representations to Alok Mathur as to the success of his investments on

numerous occasions during the Relevant Period.

41.    During the period of early 2002 through the present, Philip Massad, a business

owner in the Worcester area, made several investments with Mathur at Entrust totaling almost

$200,000.  Phillip Massad invested his money with Mathur at Entrust for Mathur and Johar to

invest on his behalf through Entrust.  Shortly after he made his initial investment, Phillip Massad

started receiving misleading periodic account statements from Entrust, Mathur and Johar that

knowingly or recklessly provided false information as to a positive return on the investment, the

growth in the value of the investment, and the asset allocation.  For example, the year-end 2004

statement that Entrust sent to Phillip Massad falsely stated that his account had achieved a

18.07% return and had grown in value to $348,099.06.  Entrust, Mathur, and Johar knew or

recklessly disregarded the fact, however, that Entrust's trading for the same period resulted in a

negative 65% return and losses of more than $3.7 million.

42.    Pamela Massad and Suzanne Benoit ("Benoit") are attorneys in Worcester,

Massachusetts.  Pamela Massad invested $400,000 with Mathur at Entrust, making an initial

investment of $100,000 in September 2001 and an additional investment of $300,000 in March

2002.  Benoit invested $75,000 with Mathur at Entrust, making an initial investment of $25,000

in September 2001, and additional investments of $10,000 in August 2002, $15,000 in October

2003, and $25,000 in January 2004.  Pamela Massad and Benoit invested their money with

Mathur at Entrust for Mathur and Johar to invest on their behalf through Entrust.  Shortly after

they made their initial investments with Entrust, Pamela Massad and Benoit started receiving

false and misleading periodic account statements from Entrust, Mathur and Johar that knowingly

15

or recklessly provided false information as to a positive return on the investment, the growth in

the value of the investment, and the asset allocation.  For example, the December 31, 2004

statement that Entrust sent to Pamela Massad falsely stated that her account had achieved a

18.07% return over the year and had grown in value to over $700,000. The December 31, 2004

statement that Entrust sent to Benoit falsely stated that her account had achieved a 24.28% return

over the year and had grown in value to $115,438.83.  Entrust, Mathur, and Johar knew or

recklessly disregarded the fact, however, that Entrust's trading for the same period resulted in a

negative 65% return and losses of more than $3.7 million.  Both Pamela Massad and Benoit

made additional investments with Entrust after receiving the false and misleading account

statements from Mathur and Entrust.

43.      Dr. George Seoud is a medical doctor in the New York City area.  Johar and

Mathur provided Dr. Seoud and three other investors with false written sales materials and made

a fraudulent oral presentation at a Fall 2003 meeting in New York.  The written materials falsely

claimed that Entrust managed over $105 million in assets for over 300 investors and that its asset

managers had over 30 years of collective investment experience.  Johar and Mathur knew that

this information was patently false.  It appears as if the content of the sales materials, including

the investment objectives and methodologies, was copied verbatim from the website of a

legitimate New York-based investment advisory firm, also named Entrust, in an apparent attempt

to persuade investors and prospective investors to believe that Entrust was a legitimate and

financially viable entity.  Entrust, Mathur and Johar also provided the false sales materials to

other investors and prospective investors.

44.      After receiving the false written materials and hearing the misleading sales pitch

16

from Johar and Mathur, Dr. Seoud invested $200,000 with the Defendants.  Dr. Seoud invested

money with Johar and Mathur at Entrust for them to invest on his behalf through Entrust.

Shortly after he made his initial investment with Entrust, Dr. Seoud started receiving false and

misleading periodic  account statements from Entrust, Mathur and Johar that knowingly or

recklessly provided false information as to a positive return on the investment, the growth in the

value of the investment, and the asset allocation   For example, the December 31, 2004 statement

that Entrust sent to Dr. Seoud falsely stated that his account had achieved a 17.28% return over

the year and that his initial investment of $200,000 remained intact.   Entrust, Mathur, and Johar

knew or recklessly disregarded the fact, however, that Entrust's trading for the same period

resulted in a negative 65% return and losses of more than $3.7 million.

45.     Entrust, Mathur and Johar sent Dr. Seoud a check on a quarterly basis that

purported to represent the profit generated in his account over the quarter when in fact the

account had lost money and the payment was made using other investors' funds.   Entrust,

Mathur, and Johar also caused false income tax schedules to be sent to Dr. Seoud for the year

ending 2003 that showed the false investment gains as income requiring taxes to be paid thereon.

46.     William Isola is a member of the New York City police department and a personal

friend of Mathur's.  Isola invested $61, 790 with Mathur at Entrust in three installments starting

in February 2002.  Isola invested money with Mathur at Entrust for Mathur and Johar to invest on

his behalf through Entrust.  Shortly after he made his initial investment with Entrust, Isola started

receiving misleading periodic account statements from Entrust, Mathur and Johar that knowingly

or recklessly provided false information as to a positive return on the investment, the growth in

the value of the investment, and the asset allocation.  Isola made additional investments with

17

Entrust after receiving the false and misleading account statements from Mathur and Entrust. Isola also attended the fraudulent sales meeting with Dr. Seoud in the fall of 2003, where Johar and Mathur distributed false written sales materials and made misrepresentations as to Entrust's client base, assets under management, returns, investment strategies and other facts.

47.    Steven LaGrasso is a member of the New York City police department.  LaGrasso invested $44,000 with Mathur at Entrust in two installments starting in June 2002.  LaGrasso invested money with Mathur at Entrust for Mathur to invest on his behalf.  Shortly after he made his initial investment with Entrust, LaGrasso started receiving misleading periodic account statements from Entrust, Mathur and Johar that knowingly or recklessly provided false information as to a positive return on the investment, the growth in the value of the investment, and the asset allocation.  For example, the December 31, 2004 statement that Entrust sent to LaGrasso falsely stated that his account had achieved a 13.97% return over the year and had grown in value to $52,034.07.   Entrust, Mathur, and Johar knew or recklessly disregarded the fact, however, that Entrust's trading for the same period resulted in a negative 65% return and losses of more than $3.7 million.  Entrust, Mathur and Johar sent LaGrasso checks on a number of occasions after he made his initial investment that purported to represent a portion of the profit generated in his account, when in fact the account had lost money and the payment was made using other investors' funds.  LaGrasso made his second investment with Entrust after receiving the false and misleading account statements from Mathur and Entrust.

48.    Elaine Osgood is a business owner who lives in the Worcester, Massachusetts area.  During the period of early 2003 through the present, Osgood made several investments with Johar at Entrust totaling almost $500,000.  Osgood invested the money with Johar at Entrust

for Johar to invest on behalf of Osgood's business, E&P Enterprises, Inc.  Beginning shortly after

she made the initial investment, Osgood started receiving misleading periodic account statements

from Entrust, Mathur and Johar that knowingly or recklessly provided false information as to a

positive return on the investment, the growth in the value of the investment, and the asset

allocation.  For example, the August 2004 statement that Entrust sent to Osgood in September

falsely stated that her account had achieved a 5.6% return during 2004 and had grown in value to

$610,223.05.   Entrust, Mathur, and Johar knew or recklessly disregarded the fact, however, that

Entrust's trading for the same period resulted in a double-digit  negative return and losses of

more than $3 million.  In late 2004, Osgood demanded that Entrust redeem her investment.  In

late 2004 and early 2005, Johar, Mathur and Entrust, paid out approximately $600,000 to

Osgood, which supposedly represented the total value of her investment.  Johar told Osgood that

the payout was less than expected because for the first time ever, her account had suffered a loss.

The payout, however, was made using other investors' money, because contrary to their

statements, Entrust, Johar, and Mathur had dissipated most of Osgood's investment through

undisclosed trading losses and misappropriation.  Entrust, Mathur, and Johar also caused false

income tax schedules to be sent to Osgood for the year ending 2003 that showed the fake

investment gains as income requiring taxes to be paid thereon.

      49.    In addition to the above investors, other individuals made investments or were

solicited for investments by Entrust, Mathur, and Johar and received similar false and misleading

information concerning Entrust's client base, assets under management, returns, investment

strategies and other facts.

      50.    The account statements described above were sent to investors by Entrust,

Mathur, and Johar with knowledge that the statements were false, and/or with reckless disregard for their falsity. The statements were sent for the purpose of inducing additional investments and for lulling their clients into not withdrawing their funds. These statements had the heading Entrust Capital Management, Inc., and generally were accompanied by a letter bearing the signature of Amit Mathur and/or Rajeev Johar. The accompanying letters repeated the false return information and made other false statements such as the type of investments and the strategies that Entrust was employing to invest the funds. The letters gave the false impression that Entrust, Mathur, and Johar were on-track with a methodology designed to preserve their clients' investment principal and safely generate returns, when in fact Entrust was sustaining heavy losses through high-risk trading activities and dissipating assets through misappropriation.

## PENALTIES

51.    The violations set forth in this Complaint involve fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement and such violations directly or indirectly resulted in substantial losses, or created a significant risk of substantial losses to other persons. Therefore, Defendants Mathur, Johar and Entrust are subject to imposition of significant tier three civil penalties for each of the following claims.

### FIRST CLAIM FOR RELIEF
### AGAINST MATHUR, JOHAR AND ENTRUST
### Fraud in the Offer and Sale of Securities
### [Violation of Section 17(a) of the Securities Act]

52.    The Commission repeats and incorporates by reference the allegations in paragraphs 1-51 of the Complaint as if set forth fully herein.

53.    Mathur, Johar and Entrust, directly or indirectly, acting intentionally, knowingly

or recklessly, in the offer or sale of securities by use of the means or instruments of transportation

or communication in interstate commerce or by use of the mails:  (a) have employed, are

employing, and are about to employ devices, schemes or artifices to defraud; (b) have obtained,

are obtaining, and are about to obtain money or property by means of untrue statements of

material fact or omissions to state a material fact necessary in order to make the statements made,

in the light of the circumstances under which they were made, not misleading; or (c) have

engaged, are engaging, and are about to engage in transactions, practices or courses of business

which operate as a fraud or deceit upon the purchasers of the securities.

54.     As a result, Mathur, Johar and Entrust have violated, are violating and, unless

enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**SECOND CLAIM FOR RELIEF**
**AGAINST MATHUR, JOHAR AND ENTRUST**
**Fraud in Connection with the Purchase and Sale of Securities**
**[Violation of Section 10(b) of the Exchange Act and Rule 10b-5]**

55.     The Commission repeats and incorporates by reference the allegations in

paragraphs 1-51 of the Complaint as if set forth fully herein.

56.     Mathur, Johar and Entrust, directly or indirectly, acting intentionally, knowingly

or recklessly, by use of the means or instrumentalities of interstate commerce or of the mails, in

connection with the purchase or sale of securities:  (a) have employed, are employing, and are

about to employ devices, schemes or artifices to defraud; (b) have made, are making, and are

about to make untrue statements of material fact or have omitted, are omitting, and are about to

omit to state a material fact necessary in order to make the statements made, in the light of the

circumstances under which they were made, not misleading; or (c) have engaged, are engaging,

21

and are about to engage in acts, practices or courses of business which operate as a fraud or deceit upon certain persons.

57.     As a result, Mathur, Johar and Entrust have violated, are violating and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF
## AGAINST MATHUR, JOHAR AND ENTRUST
### Fraudulent Scheme or Device By an Investment Adviser
### [Violation of Section 206(1) of the Advisers Act]

58.     The Commission repeats and incorporates by reference the allegations in paragraphs 1-51 of the Complaint as if set forth fully herein.

59.     Mathur, Johar and Entrust, directly or indirectly, acting intentionally, knowingly, or recklessly, by use of the means or instrumentalities of interstate commerce, have employed a device, scheme, or artifice to defraud clients and prospective clients.

60.     As a result, Mathur, Johar and Entrust have violated, are violating, and unless enjoined, will continue to violate Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)].

## FOURTH CLAIM FOR RELIEF
## AGAINST MATHUR , JOHAR AND ENTRUST
### Fraudulent Transaction, Practice, or Course of Business By an Investment Adviser
### [Violation of Section 206(2) of the Advisers Act]

61.     The Commission repeats and incorporates by reference the allegations in paragraphs 1-51 of the Complaint as if set forth fully herein.

62.     Mathur, Johar and Entrust, directly or indirectly, acting intentionally, knowingly, or recklessly, by use of the means or instrumentalities of interstate commerce, have engaged in

transactions, practices, or courses of business which operate as a fraud or deceit upon clients or prospective clients.

63.    As a result, Mathur , Johar and Entrust have violated, are violating, and unless enjoined, will continue to violate Section 206(2) of the Advisers Act [15 U.S.C.§ 80b-6(2)].

### FIFTH CLAIM FOR RELIEF
### AGAINST MATHUR AND JOHAR
### Fraudulent Scheme or Device By an Investment Adviser
### [Aiding and Abetting Violation of Section 206(1) of the Advisers Act]

64.    The Commission repeats and incorporates by reference the allegations in paragraphs 1-51 of the Complaint as if set forth fully herein.

65.    Entrust, directly or indirectly, acting intentionally, knowingly, or recklessly, by use of the means or instrumentalities of interstate commerce, has employed a device, scheme, or artifice to defraud clients and prospective clients.

66.    Mathur and Johar knew, or were reckless in not knowing, that Entrust's conduct was improper and they knowingly and substantially assisted Entrust in defrauding clients and prospective clients.

67.    By reason of the foregoing, Mathur and Johar aided and abetted Entrust's violations of Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)].

### SIXTH CLAIM FOR RELIEF
### AGAINST MATHUR AND JOHAR
### Fraudulent Transaction, Practice, or Course of Business By an Investment Adviser
### [Aiding and Abetting Violation of Section 206(2) of the Advisers Act]

68.    The Commission repeats and incorporates by reference the allegations in paragraphs 1-51 of the Complaint as if set forth fully herein.

69.    Entrust, directly or indirectly, acting intentionally, knowingly, or recklessly, by use of the means or instrumentalities of interstate commerce, has engaged in transactions, practices, or courses of business which operate as a fraud or deceit upon clients or prospective clients.

70.    Mathur and Johar knew, or were reckless in not knowing, that Entrust's conduct was improper and they knowingly and substantially assisted Entrust in engaging in transactions, practices, or courses of business which operated as a fraud or deceit upon clients or prospective clients.

71.    As a result, Mathur and Johar aided and abetted Entrust's violations of Section 206(2) of the Advisers Act [15 U.S.C.§ 80b-6(2)].

## SEVENTH CLAIM
### (Unjust Enrichment of Relief Defendant AMR Realty)

72.    The Commission repeats and incorporates by reference the allegations in paragraphs 1-51 of the Complaint as if set forth fully herein.

73.    AMR Realty has no legitimate interest in, or right to, the funds received from Defendants Entrust, Mathur and Johar, which are currently being held by it, and therefore, in equity and good conscience, it should not be allowed to retain such funds.

74.    As a result, AMR Realty is liable for unjust enrichment and should be required to return its unjust enrichment, with pre-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court:

A.    Enter a preliminary injunction, an order freezing assets and other equitable relief

24

in the form submitted with the Commission's motions for such relief.

B.     Enter a permanent injunction restraining Defendants and each of their agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, including facsimile transmission or overnight delivery service, from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect, in violation of:

     1.     Section 17(a) of the Securities Act [15 U.S.C. § 17q(a)];

     2.     Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and

     3.     Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. § 80b-6(1), (2)];

C.     Issue an Order requiring Defendants Mathur, Johar and Entrust and Relief Defendant AMR Realty to disgorge all ill-gotten gains and unjust enrichment, plus pre-judgment interest, with said monies to be distributed in accordance with a plan of distribution to be ordered by the Court;

D.     Issue an Order requiring Defendants Mathur, Johar and Entrust each to pay a civil penalty in an appropriate amount pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77(t) (d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u (d)] and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9 (e)].

E.     Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

F.      Grant such other relief as this Court deems just and appropriate under the

circumstances.

Respectfully submitted,

By:    /s/ R. Daniel O'Connor
       R. Daniel O'Connor   (Mass. Bar No. 634207)
       Senior Trial Counsel
       oconnord@sec.gov
       Steven Y. Quintero    (Mass. Bar No. 632079)
       Assistant District Administrator
       quinteros@sec.gov
       Risa A. King           (Mass. Bar No. 648217)
       Enforcement Attorney
       kingr@sec.gov


       ATTORNEYS FOR PLAINTIFF
       SECURITIES AND EXCHANGE COMMISSION
       73 Tremont Street, 6th Floor
       Boston, Massachusetts 02108
       (617) 573-8979 (O'Connor)
       (617) 424-5940 (facsimile)

Dated: September 14, 2005

26