UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br>       Plaintiff <br><br> v. <br><br> AMIT MATHUR and <br> ENTRUST CAPITAL MANAGEMENT, INC., <br>       Defendants <br> and <br><br> AMR REALTY, LLC, <br><br>       Relief Defendant. | **No. 05-CV-10729 MLW** |

**ANSWER OF DEFENDANT AMIT MATHUR TO
THE PLAINTIFF SECURITIES AND EXCHANGE
COMMISSION'S FIRST AMENDED COMPLAINT**

The defendant Amit Mathur hereby answers the Amended Complaint of the plaintiff

Securities and Exchange Commission ("SEC" or the "Commission") as follows:

**PRELIMINARY STATEMENT**

1.      Paragraph 1 of the Complaint identified as a Preliminary Statement is in the

nature of an introductory paragraph and requires no answer. To the extent paragraph 1 contains

any allegations of fact, they are denied.

2.      Mathur admits that he formed relief defendant AMR and is its managing member.

Mathur admits that AMR was used to make some real estate investments for the defendant

Entrust Capital Management, Inc. ("Entrust"). The remainder of the allegations contained in

paragraph 2 of the Complaint are denied.

3.      Paragraph 3 contains legal conclusions, and as such, no answer is required. To

the extent paragraph 3 contains allegations of fact, they are denied..

1

4.      Paragraph 4 is a request for relief, and therefore, no response is required.  To the extent paragraph 4 contains allegations of fact, they are denied.

5.      Mathur admits that this court has jurisdiction over this matter.

### DEFENDANTS

6.      Mathur admits the allegations contained in the first sentence of paragraph 6. Further answering, Mathur admits that he is the founder, principal and owner of AMR and that he is a co-owner of Entrust.  The third sentence of paragraph 6 contains conclusions of law, and therefore no response is required; any allegations of fact in that sentence are denied.  Further answering, Mathur admits that during his April 1, 2005 testimony in front of the Commission, he asserted his Fifth Amendment right against self-incrimination with regards to certain subject areas including those relating to: (1) the operations and activities of Entrust and AMR; (2) uses of investor funds by Mathur, Entrust and AMR; and (3) statements that Mathur, Entrust or AMR made to investors.

7.      Mathur is without sufficient information to admit or deny the allegations contained in the first sentence of paragraph 7.  Mathur admits that Rajeev Johar ("Johar") was a principal of Entrust, and operated an office in West Monroe, Louisiana.  Mathur denies the remainder of the allegations contained in the second sentence of paragraph 7.  The third sentence of paragraph 7 contains conclusions of law and, as such, no response is required.  To the extent the allegations contained in the fourth sentence of  paragraph 7 are drawn from a document, that document speaks for itself.

8.      Mathur admits that Entrust operates an office in Worcester, Massachusetts of which Mathur is the manager.  Mathur also admits that Johar operates out of Louisiana.  The last

sentence of paragraph 8 contains conclusions of law and therefore, no response is required; all allegations of fact in that sentence are denied.

**RELIEF DEFENDANT**

9.  Mathur admits that AMR is a Massachusetts limited liability company established in 2003 and that AMR is in the business of developing real estate. Mathur also admits that he owns and controls AMR and that the company was used to conduct some real estate investments for Entrust. The remainder of the allegations contained in paragraph 9 are denied.

**FACTS**

10.  Mathur admits that he and Johar received money from clients, but denies the number of clients and the amount of money received. Further answering Mathur states that Entrust used some funds to invest in marketable securities and to buy and develop real estate. Mathur also admits that Entrust commingled some of the monies together. The remainder of the allegations contained in paragraph 10 are denied.

**Entrust's Investments in Marketable Securities**

11.  Mathur admits the allegations contained in the first sentences of paragraph 11. Mathur admits that that the account held at Kimball & Cross Investment Management Corp. ("K&C") was one of the accounts used for buying and selling securities. Mathur admits that client funds were transferred from an account held at Commerce Bank and Trust Company ("Commerce Bank") located in Worcester, Massachusetts into the K&C account. Mathur admits that some client funds were also deposited in an account with AIG Sun America ("Sun America"), and that that account was closed. Mathur denies all the remaining allegations contained in paragraph 11.

12.    Mathur admits that Entrust clients suffered losses as a result of the securities-related trading in the K&C brokerage account, but denies the amount.  Mathur admits that the trading activity yielded losses in certain quarters from January 2002 through January 2005, but denies the amount.  Mathur denies the remaining allegations contained in paragraph 12..

13.    To the extent the allegations contained in paragraph 13 are derived from documents, those documents speak for themselves.

14.    The allegations contained in paragraph 14 of the First Amended Complaint are denied.

15.    Mathur admits that Johar conducted trading activity in the K & C account, but denies that he conducted any trading activity himself.  The remainder of the allegations contained in paragraph 15 are denied.

### Entrust's Real Estate Ventures

16.    Mathur admits that he transferred funds into AMR's account held at Commerce Bank, but denies the amount.  The remaining allegations contained in paragraph 16 are denied.

17.    Mathur admits that, using Entrust funds and bank loans, AMR purchased at least 3 properties in Worcester Massachusetts.  Mathur admits the allegations contained in the second, third and fourth sentences of paragraph 17.  The remainder of the allegations contained in paragraph 16 are denied.

18.    Mathur admits the allegations contained in paragraph 18.

19.    The allegations contained in paragraph 19 are denied.

### Entrust and AMR Realty Bank Accounts

20.    Mathur admits that Entrust and AMR maintained separate bank accounts at Commerce Bank in Worcester, Massachusetts over which he had primary control.  Mathur also

admits that there was an Entrust account at Community Trust Bank in Louisiana over which

Johar had control.  Mathur admits that client funds were deposited into the Entrust account at

Commerce Bank prior to being invested.  Further answering, Mathur states that commissions

earned from trading activity in the K&C brokerage account, which Mathur earned pursuant to

Entrust's agreement with investors, were also deposited into the Entrust account at Commerce

Bank.  Mathur admits that he paid certain personal expenses from the Entrust account.  Mathur

lacks sufficient information to either admit or deny the allegations insofar as they pertain to

Johar.  The remaining allegations contained in paragraph 20 are denied.

21.    Mathur admits the allegations contained in the first sentence of paragraph 21 of

the First Amended Complaint.  To the extent the allegations contained in the second sentence of

paragraph 21 are drawn from a document, that document speaks for itself.

22.    The allegations contained in paragraph 22 are denied.

### Mathur's Misappropriation of Client Funds for Personal Gain

23.    Mathur admits that some of the money contained in the Entrust account at

Commerce Bank came from client deposits.  Further answering, Mathur states that Mathur

deposited other funds into the Entrust account which were not investor funds, including earned

commission payments.  Mathur also admits that some of the money in AMR Realty's account at

Commerce Bank came from the Entrust account.  Mathur denies the allegations contained in the

third sentence of paragraph 23.  Mathur denies the allegations contained in paragraph 23 to the

extent they suggest that Mathur misappropriated any client funds.  Further answering, Mathur

admits that he made withdrawals from the Entrust account by checks payable to himself, from

ATM machines and transfers to other bank accounts.  Mathur admits to withdrawing funds from

the Entrust account at the Foxwoods and Mohegan Sun Casinos, but denies the remaining

allegations contained in the fourth sentence of paragraph 23.  Mathur denies the allegations contained in the fifth sentence of paragraph 23.  Mathur admits that he used some funds from the Entrust account at Commerce Bank for car-related payments.  Mathur also admits that he used some funds from the Entrust account at Commerce Bank to pay for tickets to the Patriots and other events.  Further answering Mathur denies that he intentionally used client funds for any of these purposes or any other personal expenditures.  Mathur denies the remaining allegations contained in paragraph 23.

24.     Mathur admits that Entrust granted a mortgage to Mathur secured by Mathur's residence, which was later discharged by Johar on behalf of Entrust when no money was actually transferred to Mathur.  The remaining allegations contained in paragraph 24 are denied.

### Johar's Misappropriation of Client Funds for Personal Gain

25.     Mathur is without sufficient knowledge to admit or deny the allegations contained in paragraph 25 of the First Amended Complaint.

### Mathur's and Johar's Secret Commission Kickback Deal

26.     Mathur denies the allegations contained in the first sentence of paragraph 26 including the allegations that there was any secret arrangement or that the there was any wrongful kickback scheme in place with Entrust's broker at K&C.  Mathur admits that Entrust's broker at K&C, Robert Zanotti ("Zanotti"), would send checks representing commissions earned to Mathur and Johar based on the trades executed in the Entrust account at K&C.  Mathur also admits that the commission payments that Mathur earned were deposited into the Entrust account held at Commerce Bank.  Mathur further admits that on some occasions, Zanotti held certain assets in his own name for Mathur's benefit.  The remaining allegations contained in paragraph 26 are denied.

## Defendant's Material Misrepresentations to Investors

27.    The allegations contained paragraph 27 are denied.

28.    The allegations contained paragraph 28 are denied.

29.    Mathur denies that he knowingly, intentionally or recklessly provided false written and oral statements to the investors.  Mathur also denies that he generated any false or misleading documents that were provided to any investor.

30.    Mathur admits that some payments were made to Entrust clients representing a refund of investments made in Entrust.  The remaining allegations contained in paragraph 30 are deined.

31.    Mathur denies that he generated any false tax information or knowingly or recklessly provided any false tax information to investors.  Mathur denies the remaining allegations contained in paragraph 31.

32.    Mathur denies that he hid trading losses to investors and denies that he intentionally led them to believe that the combined worth of their investments as of December 31, 2004 was well over $10 million.  Further answering, Mathur states that the balance of the K&C account had experienced losses. Mathur denies the allegations contained in the third sentence of paragraph 32.

## Misrepresentations to David Massad

33.    Mathur admits that David Massad is a business owner in the Worcester area who invested money with Entrust through Mathur.  Mathur denies the amount of David Massad's investment.

34.    Mathur denies the allegations contained in paragraph 24 of the Complaint. Further answering, Mathur states that he did not generate any false or misleading documents that

were provided to any investor, including David Massad.  To the extent the allegations contained

in paragraph 34 are derived from documents, those documents speak for themselves.  The

remaining allegations of fact contained in paragraph 34 are denied.

35.     Mathur admits that in 2003 David Massad provided Entrust with funds to invest

in General Motors Corp. ("GM") and the Ford Motor Company ("Ford").  Mathur also admits

that on or about the dates specified in paragraph 35, Massad provided checks to Entrust in the

amounts specified in the paragraph.  Mathur denies the remaining allegations of paragraph 35.

36.     Mathur admits that GM and Ford stock were to be purchased and held separate

from the rest of the hedge fund, however, they would be held in the same account.  Further

answering, Mathur admits the hoped for return on the GM and Ford investments.  Mathur also

admits that Entrust agreed to pay David Massad certain dividends on a quarterly basis.  Mathur

denies the remaining allegations of paragraph 36.

37.     Mathur denies that he knowingly or intentionally sent any false or misleading

information to David Massad.  Mathur admits that Entrust sent David Massad checks on a

quarterly basis between September 2002 and January 2005 in the approximate amount of

$92,150, totaling approximately $547,500.  Mathur denies the remaining allegations of

paragraph 37.

38.     Mathur understands and admits that Entrust did not purchase all the shares that

had originally been discussed.  Mathur denies the allegations contained in the second sentence of

paragraph 38.  Further answering, Mathur states that the investment was always to be held in a

single account with the other Entrust investments, and that Mathur explained this to David

Massad.  Mathur admits that dividend checks were sent to David Massad, but denies that those

checks were sent to David Massad to "trick" him.  Mathur admits that less than $5 million was

invested in the GM stock. Mathur denies the allegations contained in the last sentence of paragraph 38 and the remaining allegations of paragraph 38.

39.    Mathur denies that he sold any of David Massad's GM or Ford stock. Mathur denies the allegations contained in the second sentence of paragraph 39. Further answering, Mathur states that the GM stock and Ford stock had always been held in a single account with other Entrust investments, and any trading of those stocks would have been deposited in that single account. Mathur admits that monies from the Entrust account were used to pay David Massad. Mathur admits that by Janaury 2005 Entrust held fewer shares of GM and Ford stock than had been originally discussed. Mathur admits that dividend checks were sent to David Massad, but denies that those checks were sent to David Massad to "trick" him. Mathur denies the remaining allegations of paragraph 39.

### Misrepresentations to Other Investors

40.    Mathur admits that Alok Mathur is a relative of his mother. Mathur admits that Alok Mathur provided certain funds to be invested with Entrust, but denies the amount. Mathur denies the allegations contained in the third sentence of paragraph 40. Further answering, Mathur denies that he provided Alok Mathur with false or misleading information, or that he used false or misleading information to induce Alok Mathur to make further investments with Entrust. Mathur admits the allegations contained in the fourth sentence of paragraph 41. Mathur is without sufficient information to admit or deny what Alok Mathur received. Further answering, Mathur denies that he generated or willfully or recklessly provided false or misleading information to Alok Mathur. To the extent the allegations contained in the fifth sentence of paragraph 40 are drawn from documents, those documents speak for themselves. Mathur denies the remaining allegations contained in paragraph 40.

41.    Mathur admits that Philip Massad is a business owner in the Worcester area, and that he provided funds to be invested with Entrust, but denies the amount of Philip Massad's investment. Mathur admits the allegations contained in the second sentence of paragraph 41. Mathur is without sufficient information to either admit or deny what Philip Massad received. Further answering, Mathur denies that Mathur knowingly, intentionally or recklessly provided false information to Philip Massad. To the extent the allegations contained in the fourth sentence of paragraph 41 are derived from documents, those documents speak for themselves. The remaining allegations contained in paragraph 41 are denied.

42.    Mathur admits that Pamela Massad and Suzanne Benoit are attorneys in Worcester, Massachsetts. Mathur admits that Pamela Massad provided funds to be invested with Entrust, but denies the amount. Mathur admits that Suzanne Benoit provided funds to be invested with Entrust, but denies the amount. Mathur admits the allegations contained in the fourth sentence of paragraph 42. Mathur is without sufficient information to either admit or deny what Pamela Massad or Suzanne Benoit received. Further answering, Mathur denies that Mathur knowingly, intentionally or recklessly provided false information to Pamela Massad or Suzanne Benoit. To the extent the allegations contained in the sixth and seventh sentences of paragraph 42 are derived from documents, those documents speak for themselves. The allegations contained in the eighth sentence of paragraph 42 are denied. The allegations contained in the ninth sentence of paragraph 42 are admitted. The remaining allegations contained in paragraph 42 are denied.

43.    Mathur admits that George Seoud ("Seoud") is a doctor in the New York City area. Mathur denies that he intentionally, willfully or recklessly provided any false or misleading information to Seoud or any other investors, and denies that he made a fraudulent

oral presentation in the Fall of 2003 or any other time. To the extent the allegations contained in paragraph 43 are drawn from documents, those document speak for themselves. The remaining factual allegations contained in paragraph 43 are denied.

44.     Mathur denies that he induced Seoud to invest any money with Entrust based on false and misleading information, but admits that Seoud invested some money with Entrust. Mathur admits the allegations contained in the second sentence of paragraph 44. Mathur is without sufficient information to either admit or deny what Seoud received. Further answering, Mathur denies that Mathur knowingly, intentionally or recklessly provided false information to Seoud. To the extent the allegations contained in the fourth sentence of paragraph 44 are derived from documents, those documents speak for themselves. The remaining allegations contained in paragraph 44 are denied.

45.     Mathur admits that checks were sent to Seoud from the Entrust account at Commerce Bank. Mathur denies the remaining allegations contained in paragraph 45.

46.     Mathur admits that William Isola ("Isola") is a member of the New York City Police Department and a person friend of Mathur's. Mathur admits that Isola provided funds to be invested with Entrust, but denies the amount. Mathur admits the allegations contained in the third sentence of paragraph 46. Mathur is without sufficient information to either admit or deny what Isola received. Further answering, Mathur denies that Mathur knowingly, intentionally or recklessly provided false information to Isola. Mathur admits that Isola made additional investments with Entrust. Mathur admits that Isola was at a sales meeting in new York City at which Seoud was present, but denies that he intentionally, willfully or recklessly provided any false written  materials or made misrepresentations to any person at that meeting. Mathur denies the remaining allegations contained in paragraph 46.

47.    Mathur admits that Steven LaGrasso ("LaGrasso") is a member of the New York City Police Department. Mathur admits that LaGroasso provided funds to be invested with Entrust, but denies the amount. Mathur admits the allegations contained in the third sentence of paragraph 47. Mathur is without sufficient information to either admit or deny what LaGrasso received. Further answering, Mathur denies that Mathur knowingly, intentionally or recklessly provided false information to LaGrasso. To the extent the allegations contained in the fifth sentence of paragraph 47 are derived from documents, those documents speak for themselves. The allegations contained in the sixth sentence of paragraph 47 are denied. Mathur admits that checks from the Entrust account at Commerce Bank were sent to LaGrasso, and that LaGrasso made additional investments with Entrust. The remaining allegations contained in paragraph 47 are denied.

48.    Mathur admits that Elaine Osgood ("Osgood") is a business owner who lives in Worcester, Massachusetts. Mathur admits that Osgood made investments with Johar, but denies the amount. Mathur is without sufficient information to either admit or deny the allegations contained in the third sentence of paragraph 48. Mathur is without sufficient information to either admit or deny what Osgood received. Further answering, Mathur denies that Mathur knowingly, intentionally or recklessly provided false information to Osgood. To the extent the allegations contained in the fifth sentence of paragraph 48 are derived from documents, those documents speak for themselves. The allegations contained in the sixth sentence of paragraph 48 are denied. Mathur admits that Osgood requested that her investment be redeemed in late 2004. Mathur also admits that a payment was made to Osgood from the Entrust Account at Commerce Bank. The remaining allegations contained in paragraph 48 are denied.

49.     Mathur admits that other investors were solicited for investments with Entrust or made investments with Entrust, but denies that he intentionally, willfully or recklessly provided false or misleading information to any investor.  The remaining allegations contained in paragraph 49 are denied.

50.     The allegations contained in the first and second sentences of paragraph 50 are denied.  To the extent that the remaining allegations contained in paragraph 50 are derived from documents, those documents speak for themselves.  The remaining factual allegations contained in paragraph 50 are denied.


## PENALTIES

51.     Paragraph 51 contains conclusions of law to which no response is required.  To the extent paragraph 51 contains any allegations of fact, they are denied.

### FIRST CLAIM FOR RELIEF
### AGAINST MATHUR, JOHAR AND ENTRUST
### Fraud in the Offer and Sale of Securities
### [Violation of Section 17(a) of the Securities Act]

52.     Mathur repeats and incorporates by reference his answer to the allegations contained in paragraphs 1-52 of the First Amended Complaint as if fully set forth herein.

53.     The allegations contained in paragraph 53 are denied.

54.     Paragraph 54 contains conclusions of law to which no response is required.  To the extent paragraph 54 contains any allegations of fact, they are denied.

### SECOND CLAIM FOR RELIEF
### AGAINST MATHUR, JOHAR AND ENTRUST
### Fraud in Connection with the Purchase and Sale of Securities
### [Violation of Section 10(b) of the Exchange Act and Rule 10b-5]

55.     Mathur repeats and incorporates by reference his answer to the allegations

contained in paragraphs 1-54 of the First Amended Complaint as if fully set forth herein.

56.     The allegations contained in paragraph 56 denied.

57.     Paragraph 57 contains conclusions of law to which no response is required.  To

the extent paragraph 57 contains any allegations of fact, they are denied.

## THIRD CLAIM FOR RELIEF
## AGAINST MATHUR, JOHAR AND ENTRUST
### Fraudulent Scheme or Device by an Investment Advisor
### [Violation of Section 206(1) of the Advisors Act]

58.     Mathur repeats and incorporates by reference his answer to the allegations

contained in paragraphs 1-57 of the First Amended  Complaint as if fully set forth herein.

59.     The allegations contained in paragraph 59 are denied.

60.     Paragraph 60 contains conclusions of law to which no response is required.  To

the extent paragraph 60 contains any allegations of fact, they are denied.

## FOURTH CLAIM FOR RELIEF
## AGAINST MATHUR, JOHAR AND ENTRUST
### Fraudulent Transaction, Practice, or Course of Business by an Investment Advisor
### [Violation of Section 206(2) of the Advisor's Act]

61.     Mathur repeats and incorporates by reference his answer to the allegations

contained in paragraphs 1-60 of the First Amended Complaint as if fully set forth herein.

62.     The allegations contained in paragraph 62 are denied.

63.     Paragraph 63 contains conclusions of law to which no response is required.  To

the extent paragraph 63 contains any allegations of fact, they are denied.

## FIFTH CLAIM FOR RELIEF
## AGAINST MATHUR AND JOHAR

**Fraudulent Scheme or Device by an Investment Advisor**
**[Aiding and Abetting Violation of Section 206(1) of the Advisor's Act]**

64.    Mathur repeats and incorporates by reference his answer to the allegations contained in paragraphs 1-63 of the First Amended Complaint as if fully set forth herein.

65.    The allegations contained in paragraph 65 are denied.

66.    The allegations contained in paragraph 66 are denied.

67.    Paragraph 67 contains conclusions of law to which no response is required.  To the extent paragraph 67 contains any allegations of fact, they are denied.

## SIXTH CLAIM FOR RELIEF
### AGAINST MATHUR AND JOHAR
**Fraudulent Transaction, Practice, or Course of Business by an Investment Advisor**
**[Aiding and Abetting Violation of Section 206(2) of the Advisor's Act]**

68.    Mathur repeats and incorporates by reference his answer to the allegations contained in paragraphs 1-67 of the First Amended Complaint as if fully set forth herein.

69.    The allegations contained in paragraph 69 are denied.

70.    The allegations contained in paragraph 69 are denied.

71.    Paragraph 71 contains conclusions of law to which no response is required.  To the extent paragraph 71 contains any allegations of fact, they are denied.

## SEVENTH CLAIM
### (Unjust Enrichment of Relief Defendant AMR Realty)

72.    Mathur repeats and incorporates by reference his answer to the allegations contained in paragraphs 1-71 of the First Amended  Complaint as if fully set forth herein.

73.    The allegations contained in paragraph 73 are directed to and pertain to relief defendant AMR, and therefore no answer is required.  To the extent that the allegations contained in paragraph 73 are directed to or pertain to Mathur, those allegations are denied.

74.    Paragraph 74 contains conclusions of law to which no response is required.  To the extent paragraph 74 contains any allegations of fact, they are denied.


The remainder of the Complaint are Prayers for Relief, to which no answer is required.


## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Commission has not stated a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Commission's claims are barred under the doctrines of waiver and estoppel.

### THIRD AFFIRMATIVE DEFENSE

The Commission's claim against Mathur for violations of section 17(a) of the Securities Act fails as a matter of law because Mathur's conduct was not intentional, knowing or reckless.

### FOURTH AFFIRMATIVE DEFENSE

The Commission's claim against Mathur for violations of section 10(b) of the Securities Act and Rule 10b-5 fails as a matter of law because Mathur's conduct was not intentional, knowing or reckless.

### FIFTH AFFIRMATIVE DEFENSE

The Commission's claim against Mathur for violations of section 206(1) of the Advisors Act fails as a matter of law because Mathur's conduct was not intentional, knowing or reckless.

### SIXTH AFFIRMATIVE DEFENSE

The Commission's claim against Mathur for violations of section 206(2) of the Advisors Act fails as a matter of law because Mathur's conduct was not intentional, knowing or reckless.

## SEVENTH AFFIRMATIVE DEFENSE

The Commission's claim against Mathur for aiding and abetting violations of section 206(1) of the Advisors Act fails as a matter of law because to the extent Entrust's conduct violated the statute, Mathur did not know or was not reckless in not knowing that Entrust's conduct was improper.

## EIGHTH AFFIRMATIVE DEFENSE

The Commission's claim against Mathur for aiding and abetting violations of section 206(1) of the Advisors Act fails as a matter of law because to the extent Entrust's conduct violated the statute, Mathur did not knowingly or substantially assist Entrust's in defrauding any clients.

## NINTH AFFIRMATIVE DEFENSE

The Commission's claim against Mathur for aiding and abetting violations of section 206(2) of the Advisors Act fails as a matter of law because to the extent Entrust's conduct violated the statute, Mathur did not know or was not reckless in not knowing that Entrust's conduct was improper.

## TENTH AFFIRMATIVE DEFENSE

The Commission's claim against Mathur for aiding and abetting violations of section 206(2) of the Advisors Act fails as a matter of law because to the extent Entrust's conduct violated the statute, Mathur did not knowingly or substantially assist Entrust in defrauding any clients.

## ELEVENTH AFFIRMATIVE DEFENSE

The Commission's claims against Mathur fail as a matter of law because there was no device scheme or artifice to defraud.

## TWELFTH AFFIRMATIVE DEFENSE

The Commission's claims against Mathur fail as a matter of law because there was no plan to defraud investors.

## THIRTEENTH AFFIRMATIVE DEFENSE

The Commission's claims against Mathur must be dismissed because the Commission did not plead the elements of the allegedly fraudulent conduct with particularity pursuant to Fed. R. Civ. P. 9(b).

Respectfully submitted,

**AMIT MATHUR**
by his attorneys,


/s/ Gary C. Crossen
Gary C. Crossen, BBO No. 106580
gcrossen@rubinrudman.com
Nur-ul-Haq, BBO No. 647448
nurulhaq@rubinrudman.com
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110
(617) 330-7000
(617) 439-9556 (facsimile)

Dated: October 24, 2005