UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE
COMMISSION,
      Plaintiff

v.

AMIT MATHUR and
ENTRUST CAPITAL MANAGEMENT,
INC.,
      Defendants

and

AMR REALTY, LLC,

      Relief Defendant.

No.  05-CV-10729 MLW

**EMERGENCY JOINT MOTION OF DEFENDANT AMIT MATHUR
AND PLAINTIFF SECURITIES AND EXCHANGE COMMISSION
FOR RELIEF FROM RESTRAINING ORDER  TO PERMIT
SALE OF REAL ESTATE**

In accordance with the Defendant Amit Mathur ("Mathur") and the Plaintiff Securities

and Exchange Commission's ("SEC") (collectively, the "Parties") notification to the court of

Mathur's intention to sell his primary residence located at 54 Colonial Drive, Shrewsbury,

Massachusetts, (the "Property") filed with the Court on October 21, 2005, the Parties hereby

jointly move for relief from the Order of Preliminary Injunction entered by the Court on April

19, 2005 (the "Order"), permitting Mathur to consummate the sale of the Property, in

substantially the same form and the Proposed Order filed herewith.  In support of this Motion,

the Parties state the following:

      1.      Pursuant to agreement with the SEC, Mathur employed a real estate broker, Julie

Sprindzunas, to facilitate the sale of the Property with SEC approval.  Ms. Sprindzunas is not

related to Mathur and has no connection to the allegations listed in the SEC's Amended

Complaint.  She listed the Property for sale at $890,000, a price approved by the SEC, and solicited offers from interested buyers.  As offers were received, Ms. Sprindzunas consulted directly with the SEC as to whether the amount offered was acceptable to the SEC.

2.      On or about April 9, 2006 a written Offer to Purchase Real Estate was executed for the Property for the sale price of $882,500 (the "Offer").  (A copy of the Offer is attached hereto as Exhibit A.)  The prospective buyer is Luigi A. Palermo, who is unrelated to Mr. Mathur.  The offer is subject to certain contingencies including appraisal, home inspection, financing and other contingencies listed in the Offer and Contingency Addenda to the Offer (the "Addenda").  (A copy of the Addenda is attached hereto as Exhibit B.)  The purchase of the Property is scheduled to close on June 12, 2006.

3.      The purchase price in the Offer is consistent with the value attributed to the Property by an independent appraiser of $877,000 as of October 11, 2005.  (A copy of the appraisal report is attached hereto as Exhibit C.)

4.      Upon closing, the proceeds from the sale will be used to pay off an indebtedness secured by a mortgage on the Property in the amount of approximately $660,000, pay a 6% commission to the real estate broker(s), and other reasonable closing costs not unacceptable to the SEC.  The remainder will be deposited in an escrow account held at Mathur's law firm of Rubin & Rudman, LLP.  No proceeds of the sale will be put to the use of Mathur, personally or to the use of the defendant Entrust Capital Management, Inc. or relief defendant AMR Realty, LLC.

5.      The sale of the Property will provide additional funds to satisfy any potential judgment obtained by the SEC in this action.  No party will be prejudiced by the granting of the relief sought in this Motion.

**WHEREFORE**, for the foregoing reasons, Mathur and the SEC jointly move for relief

from the Order dated April 19, 2005 to permit Mathur to consummate the sale of the Property, in

accordance with the terms of the Offer, in substantially the same form as the Proposed Order

submitted herewith.


Respectfully submitted,


**THE SECURITIES AND EXCHANGE**            **AMIT MATHUR**
**COMMISSION,**
by its attorneys                           by his attorneys



/s/ R. Daniel O'Connor_____       /s/ Nur-ul-Haq_____
R. Daniel O'Connor, BBO No. 634207          Gary C. Crossen, BBO No. 106580
oconnord@sec.gov                            gcrossen@rubinrudman.com
Steven Y. Quintero, BBO No.  632079         Nur-ul-Haq, BBO No. 647448
quinteros@sec.gov                           nurulhaq@rubinrudman.com
Risa A. King, BBO No. 648217                Rubin and Rudman LLP
kingr@sec.gov                               50 Rowes Wharf
Securities and Exchange Commission          Boston, MA 02110
33 Arch Street                              Tel: (617) 330-7000
23rd Floor                                  Fax: (617) 330-7550
Boston, MA 02110
Tel: 617-573-8963
Fax: 617-424-5940


Dated: April 12, 2006

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to
the registered participants as identified on the Notice of Electronic Filing (NEF) and paper
copies will be sent to those indicated as non registered participants on April 12, 2005.


/s/ Nur-ul-Haq_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>    Plaintiff<br>v.<br><br>AMIT MATHUR and<br>ENTRUST CAPITAL MANAGEMENT, INC.,<br>    Defendants<br>and<br><br>AMR REALTY, LLC,<br><br>    Relief Defendant. | **No.  05-CV-10729 MLW** |

## [PROPOSED] ORDER ALLOWING LIMITED RELIEF FROM ORDER OF PRELIMINARY INJUNCTION

This court upon Joint Motion of the plaintiff Securities and Exchange Commission ("SEC" or the "Commission"), the defendant Amit Mathur ("Mathur") hereby orders limited relief from the Order of Preliminary Injunction, entered April 19, 2005 as follows:

1.       Mathur, with approval of the SEC, may consummate the sale of the real estate located at 54 Colonial Drive, Shrewsbury, Massachusetts (the "Property"), pursuant to a written Offer to Purchase Real Estate, executed on April 9, 2006 (the "Offer"), for the purchase price of $882,500.   The purchase of the Property is scheduled to close on June 12, 2006.

2.       Upon closing, the proceeds from the sale will be used to pay off an indebtedness secured by a mortgage on the Property in the amount of approximately $660,000, a commission of 6 % to Ramsgate Realty Associates, Mr. Mathur's real estate broker (to be split with the buyer's broker), and other reasonable closing costs not unacceptable to the SEC.  The remainder will be deposited in an escrow account held at Mathur's law firm of Rubin & Rudman, LLP.

3.      No proceeds of the sale may be put to the use of Mathur personally, the defendant

Entrust Capital Management, Inc., the relief defendant, AMR Realty, LLC, or any other person

or entity related or affiliated with the defendants or relief defendant.

**IT IS SO ORDERED.**


**ENTERED THIS ___ DAY OF APRIL, 2006.**


_____

Mark L. Wolf, District Judge

697947_1

# OFFER TO PURCHASE REAL ESTATE

TO Owner of Record _____    Date: April    9th    2006
(Seller and Spouse)    From the Office of RE/MAX Walden Country

_____

The property herein referred to is identified as follows: __54  Colonial Drive, Shrewsbury, MA__    all buildings and
__approximately 1.13 acres of land__

Special provisions (if any) re fixtures, appliances, etc. _____

hereby offer to buy said property, which has been offered to me by RE/MAX Walden Country, Inc.
Dorcas Miller _____ as the Broker(s) under the following terms and conditions:

CHECK ONE:

1. I will pay therefore $ ____882,500.00____, of which    ☐ Check, subject to collection
   (a) $ ____1,000.00____ is paid herewith as a deposit to bind this Offer    ☐ Cash
   (b) $ ____43,000.00____ is to be paid as an additional deposit upon the execution of the Purchase and Sale Agreement provided for below.
   (c) $ ____838,500.00____ is to be paid at the time of delivery of the Deed in cash, or by certified, cashier's, treasurer's or bank check(s).
   (d) $ _____
   (e) $ ____882,500.00____ Total Purchase Price

2. This Offer is good until ____7____ A.M. P.M. on ____April    11th____, 2006 at or before which time a copy hereof shall be signed by you, the Seller and your (husband) (wife), signifying acceptance of this Offer, and returned to me forthwith, otherwise this Offer shall be considered as rejected and the money deposited herewith shall be returned to me forthwith.

3. The parties hereto shall, on or before ____7____ A.M. P.M. ____April    27th____, 2006 execute the applicable Standard Form Purchase and Sale Agreement recommended by the Greater Boston Real Estate Board or any form substantially similar thereto, which, when executed, shall be the agreement between the parties hereto.

4. A good and sufficient Deed, conveying a good and clear record and marketable title shall be delivered at 12:00 Noon on ____Jun.    12th____, 2006 at the appropriate Registry of Deeds, unless some other time and place are mutually agreed upon in writing.

5. If I do not fulfill my obligations under this Offer, the above mentioned deposit shall forthwith become your property without recourse to either party. Said deposit shall be held by ____Ramsgate Associates____ as escrow agent subject to the terms hereof provided however that in the event of any disagreement between the parties, the escrow agent may retain said deposit pending instructions mutually given in writing by the parties. A similar provision shall be included in the Purchase and Sale Agreement with respect to any deposit held under its terms.

6. Time is of the essence hereof.

7. Disclosures: For one to four family residences, the Buyer hereby acknowledges receipt of the Home Inspectors: Facts for Consumers brochure produced by the Office of Consumer Affairs. For residential property constructed prior to 1978, Buyer must also sign Lead Paint "Property Transfer Notification."

8. The initialed riders, if any, attached hereto are incorporated herein by reference. Additional terms and conditions, if any:
   __see addendum. Pool, home, pest, radon inspections by 4/21/06. Subject to approval and signature by 3rd__
   __party. Seller will remove Dining Room Chandelier and cap the outlet. Seller will leave the pool cover.__

NOTICE: This is a legal document that creates binding obligations. If not understood, consult an attorney. WITNESS MY HAND AND SEAL

Buyer __Luigi A. Palermo__    Buyer _____

_____
Address/City/State/Zip    Phone Numbers (Work & Home)

Receipt of deposit check for transmittal by: (Agent/Facilitator)_____
*Check shall not be deposited unless offer is accepted.*

This Offer is hereby accepted upon the foregoing terms and conditions at _____ A.M. / P.M. on _____, 20____
WITNESS my (our) hand(s) and seal(s)

_____    _____
Seller (or spouse)    Seller

Date _____

## RECEIPT FOR DEPOSIT

Received from _____ Buyer the sum of $ _____ as deposit under the terms
and conditions of above Offer, to be held by _____ as escrow agent.

Under regulations adopted pursuant to the Massachusetts license law:
All offers submitted to brokers or salespeople to purchase real property
that they have a right to sell shall be conveyed forthwith to the owner    _____
of such real property.    Agent For Seller

## Contingency Addenda (Offer)

Property: 54 Colonial Drive

Date: 4/9/06

### A. MORTGAGE CONTINGENCY

In order to help finance the acquisition of said premises, the BUYER shall apply for a conventional bank or other institutional mortgage loan of $ 95.2 payable in no less than 30 years at an interest rate not to exceed prevailing. If despite the BUYER's diligent efforts a commitment for such a loan cannot be obtained on or before 5/22 2006, the BUYER may terminate this agreement by written notice to the SELLER and/or the Broker(s), as agent(s) for the SELLER, prior to the expiration of such time, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. In no event will the BUYER be deemed to have used diligent efforts to obtain such commitment unless the BUYER submits a complete mortgage loan application conforming to the foregoing provisions on or before 4/27 2006.

### B. INSPECTION CONTINGENCY

The BUYER, may at the BUYER's own expense and on or before 4/21 2006 have the property inspected by a person engaged in the business of conducting home inspections. If it is the opinion of such inspector that the property contains serious structural, mechanical, or other defects which would cost the BUYER in the aggregate more than $ 0 to repair, then the BUYER shall have the option of revoking the Offer by written notice to the SELLER and/or the Broker(s) as agent(s) for the SELLER, prior to the expiration of such time, which notice shall be accompanied by a copy of the inspector's opinion and any related inspection report, whereupon all deposits made by the BUYER shall be forthwith refunded and this Offer shall become null and void and without further recourse to either party.

### C. PEST CONTINGENCY

The BUYER, may at the BUYER's own expense and on or before 4/21 2006 have the property inspected by a person engaged in the business of pest inspection, If it is the opinion of such inspector the property is infested by termites or other wood boring pests, then the BUYER shall have the option of revoking this offer by written notice to the SELLER and/or the Broker(s). as agent(s) for the SELLER, prior to the expiration of such time, which notice shall be accompanied by a copy of the inspector's opinion and any related inspection report, whereupon all deposits made by the BUYER shall be forthwith refunded and this Offer shall become null and void and without further recourse to either party, unless the SELLER agrees in writing that the SELLER will either treat the property to eliminate such infestation and repair all damage caused thereby or allow the BUYER a credit against the purchase price sufficient to pay the reasonable cost of any such work not completed prior to the delivery of the deed.

SELLER:

SELLER:

BUYER:

BUYER:

### D. WATER TEST CONTINGENCY

The BUYER, may at the BUYER's own expense and on or before _____ have the well and water a property inspected by a person engaged in the business of water te If test results for quality and quantity cannot be obtained satisfact the governing board of health, then the BUYER shall have the opti revoking the offer by written notice to the SELLER and/o Broker(s). as the SELLER's agent(s) prior to the expiration of time, which notice shall be accompanied by a copy of the inspe report, whereupon all deposits made by the BUYER shall be forth refunded and this Offer shall become null and void and without fu recourse to either party.

### E. SEWAGE DISPOSAL SYSTEM CONTINGENCY

The property is serviced by an on-site subsurface sewage disp system (the "System") regulated by Title 5 of the Massachusetts S Environmental Code ("Title 5"). As required by Title 5, the SELL will make arrangements to have the System inspected at the SELLE expense by a person authorized to perform such inspections "System Inspector". The condition of the property shall not be deer to violate the terms of this Offer because the SELLER is not reasona able, before the time of the delivery of the deed, to restore landscaped areas affected by such inspection. Unless, on or befo _____ 200_ the SELLER furnishes to the BUYE certification from the System Inspector, in the form prescribed by Massachusetts Department of Environmental Protection, stating that System Inspector has not found any information which indicates th the System fails to adequately protect public health or the environme as defined in Title 5, the BUYER shall have the option of revoking th offer by written notice to the SELLER and/or the Broker(s), as t agent(s) for the SELLER, on or before _____ 200_ th BUYER to elects to revoke this Offer, all deposits made by the BUYE shall be forthwith refunded and this Offer shall become null and vo and without further recourse to either party. This is required under Tit X of the Housing and Community Act of 1992.

### F. LEAD PAINT CONTINGENCY

The BUYER may, at the BUYER's own expense and within ten (10 days after the acceptance of this Offer, have the property professionall inspected for the presence of paint, plaster or other accessible material containing dangerous levels of lead (as such terms are defined by applicable Massachusetts laws and regulations). A copy of the inspector's report shall be furnished to the SELLER upon receipt by the BUYER. If it is the opinion of such inspector that any such materials are present on the property, then the BUYER shall have the option of revoking this Offer by written notice to they SELLER and/or the Broker(s), as agent(s) for the SELLER, prior to the expiration of such time, whereupon all deposits made by the BUYER shall be forthwith refunded and this Offer shall become null and void and without further recourse to either party.

### G. RADON CONTINGENCY

The BUYER may, at the BUYER's expense on or before 4/21 2006 have the property tested for the presence of Radon Gases by a person engaged in the business of testing for Radon gas in accordance with the Environmental Protection Agency and State guidelines. If the results of such testing indicates levels of Radon gases in excess of 4 picoCuries per liter of air then the BUYER shall have the option of revoking this Offer by written notice to the SELLER and/or the Broker(s), as agent(s) for the SELLER, prior to the expiration of such time, which notice shall be accompanied by a copy of the inspection report, whereupon all deposits made by the BUYER shall be forthwith refunded and this Offer shall become null and void and without further recourse to either party.

05100015

Allied Appraisal Associates of New England, Inc.

# APPRAISAL OF



## A SINGLE FAMILY RESIDENCE

**LOCATION**   :54 Colonial Drive
    SHREWSBURY           MA        01545

**CLIENT**     :Rubin and Rudman LLP
    50 Rowes Wharf BOSTON, MA 02110

**AS OF DATE**   :10/11/2005

**APPRAISER**   :Brenda Sherman

# UNIFORM RESIDENTIAL APPRAISAL REPORT

**Property Description** | File No. 05100015

| | |
|---|---|
| Property Address 54 Colonial Drive | City SHREWSBURY | State MA | Zip Code 01545 |

Legal Description  Worcester Reg. of Deeds, Book 31778 Page 32     County  WORCESTER

Assessor's Parcel No.  Map 1 Lot 10004    Tax Year 2005 R.E. Taxes $ 6,255 Special Assessments $  nonenote

Borrower  Amit Mathur    Current Owner  Same    Occupant: [x] Owner [ ] Tenant [ ] Vacant

Property rights appraised  [x] Fee Simple [ ] Leasehold   Project Type [ ] PUD [ ] Condominium (HUD/VA only)   HOA$ ___ /Mo.

Neighborhood or Project Name  Colonial Farms South    Map Reference See Attached Map   Census Tract 9240-7395

Sale Price $ N/A   Date of Sale  N/A    Description and $ amount of loan charges/concessions to be paid by seller N/A

Lender/Client  Rubin and Rudman LLP    Address  50 Rowes Wharf BOSTON, MA 02110

Appraiser  Brenda Sherman    Address 484 Main St. Ste. 460, Worcester, MA   mail@alliedappraisal.com

| Location | [ ] Urban | [X] Suburban | [ ] Rural | Predominant | Single family housing | | Present land use % | Land use change |
|---|---|---|---|---|---|---|---|---|
| Built up | [ ] Over 75% | [X] 25-75% | [ ] Under 25% | occupancy | PRICE $(000) | AGE (YRS) | One family 55 | [ ] Not likely [ ] Likely |
| Growth rate | [ ] Rapid | [X] Stable | [ ] Slow | [X] Owner | 300 Low New | | 2-4 family 5 | [x] In process |
| Property values | [ ] Increasing | [X] Stable | [ ] Declining | [ ] Tenant | 1,100 High 125+ | | Multi-family 5 | To: 1-family res. |
| Demand/supply | [ ] Shortage | [X] In balance | [ ] Over suppl | [X] Vacant (0-5%) | Predominant | | Commercial 5 | |
| Marketing time | [X] Under 3 mos. | [ ] 3-6 mos. | [ ] Over 6 mos. | [ ] Vacant (over 5%) | 600 | 50 | Vacant 30 | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics:  Subject neighborhood is bounded by the Boylston town line to the North; Hill Street to the South; Northborough to the East; and Gulf Street to the West.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.):  Neighborhood consists of a mix of 1-family residences of varying styles and ages.  The neighborhood is in proximity to all services & conveniences.  Access in the area is provided by Roues 9, 140, 20 and Interstate 290.

Market conditions in the subject neighborhood  (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time -- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.):  Subject community is in Worcester County.  Conventional financing is prevalent and affordable.  Comparable listings in the Compass MLS are offered for between $699,900 & $1,295,000.  The Compass MLS shows the following statistics for sales of 1-family homes over the previous 180 days in Shrewsbury: Sales Volume - 228; Average Sale Value - $465,590; Typical Ratio between Sale & List Values - 98.60%; Average Days On Market - 58.

Project Information for PUDs  (If applicable) - - Is the developer/builder in control of the Home Owner's Association (HOA)? [ ] Yes [ ] No

Approximate total number of units in the subject project _____  Approximate total number of units for sale in the subject project _____

Describe common elements and recreational facilities:

| | | | |
|---|---|---|---|
| Dimensions  125  feet frontage by varied metes & bounds | | Topography | Level & Open |
| Site area  1.13 acre | Corner Lot [ ] Yes [x] No | Size | Typical in Nghbrhd |
| Specific zoning classification and description  Rural B (min 125' frontage; 20,000 sqft) | | Shape | Irregular/Typical |
| Zoning compliance [X] Legal [ ] Legal nonconforming (Grandfathered use) [ ] Illegal [ ] No zoning | | Drainage | Appears Adequate |
| Highest & best use as improved: [X] Present use [ ] Other use (explain) | | View | Gd/neighborhood |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | | |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Street | Asphalt | [x] | | Landscaping | Good |
| Gas | [X] | | Curb/gutter | Asphalt | [x] | | Driveway surface | Brick/Asphalt |
| Water | [X] | | Sidewalk | None | | | Apparent easements | None Apparent |
| Sanitary sewer | [X] | | Street lights | Electric | [x] | | FEMA Special Flood Hazard Area [ ] Yes [x] No | |
| Storm sewer | | | Alley | None | | | FEMA Zone  C   Map Date 6/4/1980 | |
| | | | | | | | FEMA Map No.  250332 0002 B | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.: No easements, encroachments or adverse conditions were noted at the time of the inspection.

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
|---|---|---|---|---|
| No. of Units 1 | Foundation  Concrete | Slab  None | Area Sq. Ft. 1,856 | Roof |
| No. of Stories 1 | Exterior Walls  Stucco/Brick | Crawl Space None | % Finished 90 | Ceiling |
| Type (Det./Att.)  Det. 1-fam | Roof Surface  Asph Shingle | Basement  Full | Ceiling  Plaster/drop | Walls |
| Design (Style)  Tudor | Gutters & Dwnspts.  Yes | Sump Pump  None | Walls  Plaster | Floor |
| Existing/Proposed  Exist | Window Type  VnylCld D.H. | Dampness  No evidence | Floor  Cpt/Wd/CT | None |
| Age (Yrs.)  19 | Storm/Screens  Yes | Settlement  No evidence | Outside Entry  Bulkhead | Unknown [X] |
| Effective Age (Yrs.) 3 | Manufactured House No | Infestation  No evidence | | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | 1.5 | | | 1,856 |
| Level 1 | 1 | 1 | 1 | 1 | | 1 | | | 1 | 1 | | 1,856 |
| Level 2 | | | | | | | | 5 | 3 | 1 | | 1,938 |

Finished area above grade contains:  12 Rooms;  6 Bedroom(s);  4.0 Bath(s);  3,794 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | Wd.Cpt.Mbl-Gd | Type  FHA | | Refrigerator | [X] | None | | Fireplace(s) # 2 | [X] | None [ ] | |
| Walls | Plaster-Gd | Fuel  Gas | | Range/Oven | [X] | Stairs | | Patio | | Garage | # of cars |
| Trim/Finish | Wd-Gd | Condition  Good | | Disposal | [X] | Drop Stair | [X] | Deck  Wood | [x] | Attached  3 car | |
| Bath Floor | Mbl/CT-Gd | COOLING | | Dishwasher | [X] | Scuttle | | Porch | | Detached | |
| Bath Wainscot | Mbl-Gd | Central  Central | | Fan/Hood | [X] | Floor | | Fence | | Built-In | |
| Doors | Wd-Gd | Other | | Microwave | [X] | Heated | | Pool  In-Grnd | [x] | Carport | |
| | | Condition  Good | | Washer/Dryer | [X] | Finished | | | | Driveway  10+ cars | |

Additional features (special energy efficient items, etc.):  Subject has many additional high quality features including granite countertops, marble and hdwd flooring, remote operated blinds, heated garage, heated inground pool, central vac. etc.

Condition of the improvements, depreciation (physical, functional and external), repairs needed, quality of construction, remodeling/additions, etc.:  The subject property appeared to be in excellent condition receiving recent updates such as custom kitchen, natural stone tile, hdwd floors, remodeled bsmt. landscaping, brick driveway, and exterior lighting.  At the time of inspection, no adverse conditions were evident to subject or neighborhood.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property:  No adverse environmental conditions were noted at the time of the inspection.

Valuation Section                                                                         File No. 05100015

## COST APPROACH

| | | | |
|---|---|---|---|
| ESTIMATED SITE VALUE ........................ = $ | | 250,000 | Comments on Cost Approach (such as, source of cost estimate, |
| ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS: | | | site value, square foot calculation and for HUD, VA and FmHA, |
| Dwelling    3,794 Sq. Ft. @ $    115 = $ | 436,310 | | the estimated remaining economic life of the property): |
| Bsmt    1,856 Sq. Ft. @ $    40 = $ | 74,240 | | The Reproduction Cost estimate is based on area calculations |
| Amenities .................................... = $ | 85,000 | | shown on the attached diagram. Costs are from Marshall & |
| Garage/Carport    884 Sq. Ft. @ $    35 = $ | 30,940 | | Swift Res. Cost Handbook supplemented by the appraiser's |
| Total Estimated Cost New ............... = $ | 626,490 | | experience. Physical Depreciation is based on remaining |
| Physical    Functional    External | | | economic life using age-life method with the effective age of |
| Less | | | the subject property based on observation by the appraiser at |
| Depreciation    23,493    0    0 = $ | | 23,493 | the time of the inspection. Land value is based on a review of |
| Depreciated Value of Improvements ............ = $ | | 602,997 | land sales in community and on Assessor's records. |
| "As-is" Value of Site Improvements .............. = $ | | 25,000 | Estimated remaining economic life = 77 years |
| INDICATED VALUE BY COST APPROACH ........... = $ | | 878,000 | |

## SALES COMPARISON ANALYSIS

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 54 Colonial Drive | 16 Bridle Path | | 30 Olde Colony Drive | | 34 Blackthorne Road | |
| | SHREWSBURY | Shrewsbury | | Shrewsbury | | Shrewsbury | |
| Proximity to Subject | | .52 mile | | .95 mile | | 1.50 mile | |
| Sales Price | $ N/A | $ | 908,000 | $ | 810,000 | $ | 845,000 |
| Price/Gross Liv. Area | $    0 | $    200 | | $    212 | | $    209 | |
| Data and/or | Inspection | MLS/Banker & Tradesman | | MLS/Banker & Tradesman | | MLS/Banker & Tradesman | |
| Verification Source | | | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Unknown | | Unknown | | Unknown | |
| Concessions | | None noted | | None noted | | None noted | |
| Date of Sale/Time | N/A | 8/30/2005 | 0 | 5/27/2005 | 0 | 8/30/2005 | 0 |
| Location | Good | Good | 0 | Good | 0 | Good | 0 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 1.13 acre | .65 acre | 0 | .80 acre | No adj | 1.24 acre | 0 |
| View | Gd/neighborhood | Gd/neighborhoo | 0 | Gd/neighborhoo | 0 | Gd/neighborhoo | 0 |
| Design and Appeal | Tudor | Coln/Above Avg | 0 | Coln/Avg | 40,000 | Coln/Gd | 20,000 |
| Quality of Construction | Good | Good | 0 | Good | 0 | Good | 0 |
| Age | 19 | 7 | 0 | 16 | 0 | 9 | 0 |
| Condition | Good | Good | 0 | Good | 0 | Good | 0 |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | 0 | Total Bdrms Baths | 0 | Total Bdrms Baths | 0 |
| Room Count | 12   6   4 | 11   4/.5 | -2,000 | 12   4/2.5 | 6,000 | 12   4/3.5 | 2,000 |
| Gross Living Area | 3,794 Sq. Ft. | 4,539 Sq. Ft. | -33,525 | 3,820 Sq. Ft. | -1,170 | 4,052 Sq. Ft. | -11,610 |
| Basement & Finished | Full/Finished | Full/Finished | No adj | Full/Part Finishe | 5,000 | Full/Part Fin | 0 |
| Rooms Below Grade | Kit/1.5Bath/Fam/Br | Similar | | Rec | | Similar | No adj |
| Functional Utility | 6 Bedrooms | 5 Bedrooms | No adj | 4 Bedrooms | 0 | 4 Bedrooms | 0 |
| Heating/Cooling | FHA/Central | FHA Ht/Ctrl AC | 0 | FHW/Central | 0 | FHA Ht/Ctrl AC | 0 |
| Energy Efficient Items | None noted | None noted | | None noted | | None noted | |
| Garage/Carport | 3Attached | 2 Attached | 5,000 | 3 Attached | 0 | 2 Attached | 5,000 |
| Porch, Patio, Deck, | Deck | Deck | | Deck | | Deck | |
| Fireplace(s), etc. | 2 Fplc | 2 Fplc | 0 | 2 Fplc | 0 | 2 Fplc | 0 |
| Fence, Pool, etc. | Gd Lndscp/Ingr Pl | Gd Lndsp/IngrPl | | Avg Landscapin | 15,000 | Avg Landscapin | 15,000 |
| Net Adj. (total) | | + X -    $ | -30,525 | X + -    $ | 64,830 | X + -    $ | 30,390 |
| Adjusted Sales Price | | -3.36 % Net | | 8 % Net | | 3.60 % Net | |
| of Comparable | | 4 % Grs | $  877,475 | 8 % Grs | $  874,830 | 6 % Grs | $  875,390 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.):    Sales comparison indicates a value
range between $876,000 & $879,000 Most weight given to comp sale #1 which is located in same neighborhood and is most similar
overall. GLA adjustment is $45/sq ft; $2000/half bath; $4000/full bath. Sale #2 is adjusted approx. 5% for inferior design (no
marble/granite/brick/upgraded features similar to subject). Sale #3 is adjusted approx. 2.5% for inferior design (has marble/granite/some
upgrades-no brick, other upgrades similar to subject and sale #1 ). All other elements of comparison are adjusted at their estimated

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price, and Data | Banker & Trdsmn | Banker & Tradesman | Banker & Tradesman | Banker & Tradesman |
| Source, for prior sales | 9/26/02;$785,000 | No prior sale in past 3 yrs | No prior sale in past 3 yrs | Prior sale-9/19/02;$695,000 |
| within year of appraisal | | | | |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables
within one year of the date of appraisal:  None of the Comp. Sales have transferred in the past 3 years except as shown above.  The subject
transferred in 9/2003 for $785,000. No other transfer or listing in past three years.

| | | | | |
|---|---|---|---|---|
| INDICATED VALUE BY SALES COMPARISON APPROACH ............................................. | | | $ | 877,000 |
| INDICATED VALUE BY INCOME APPROACH    (If Applicable) Estimated Market Rent $ | | 0/Mo. x Gross Rent Multiple | = $ | 0 |

## RECONCILIATION

This appraisal is made  [X] "as is"  [ ] subject to repairs, alterations, inspections or conditions listed below  [ ] subject to completion per plans and specifications.
Conditions of Appraisal:  No Contingencies.  This a Complete Appraisal - Summary Report.

Final Reconciliation:  Most weight is given to the Sales Comparison Approach which is supported by the Cost Approach.  The Income
Approach was considered, but due to a lack of reliable rental data for 1-family homes, is deemed invalid

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent
and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revise _____ ).
I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT AS O 10/11/2005
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $    877,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): | |
|---|---|---|
| Signature  *Brenda Sherman* | Signature  *Robt C Tolland* | [ ] Did  [X] Did Not |
| Name  Brenda Sherman | Name  Robert C Tolland | Inspect Property |
| Date Report Signed  October 12, 2005 | Date Report Signed  October 12, 2005 | |
| State Certification # | State Certification # | |
| Or State License #  100481    State  MA | Or State License #  2971    State  MA | |

TEXT ADDENDUM                                                    File No. 05100015

| | | |
|---|---|---|
| Borrower: Amit Mathur | | |
| Property Address: 54 Colonial Drive | | |
| City: SHREWSBURY | State: MA | County: WORCESTER |
| Lender: Rubin and Rudman LLP | | Zip Code: 01545 |

Allied Appraisal Associates of New England, Inc.        ALLIEDAPPRAISAL.COM

## Purpose and Scope of Appraisal

The purpose of this report is to estimate market value of the subject property.

The scope of this report includes the process of collecting, confirming and reporting the data, which has been conducted by the appraiser.

This is a Complete Appraisal - Summary Report based on an interior and exterior inspection of the subject property, an exterior inspection of the comparable sales, discussion (where possible) with interested parties to the comparable sales, a review of municipal records and other pertinent public data, and a review of material on file in this office.

## Function of Appraisal

To provide the client with an estimate of market value of the subject property as defined above, considering a reasonable marketing period, and to be used to assist in collateral valuation and/or portfolio management. This appraisal is prepared for the exclusive use of the client to assist in the clients decision making and not for third party use or decision making. A third party or customer of the client is not authorized to rely upon the information in this appraisal without the express written consent of the appraiser and supervisor.

## Sales History

The subject property transferred on September 26, 2003 for $785,000. No other sale or listing history in the past three years.

## Hazardous Materials

In this appraisal assignment, potentially hazardous material used in the construction or maintenance of the building, such as asbestos, lead paint, hazardous waste, toxic materials, petroleum contamination, and/or radon gas may or may not be present on the property. The Appraiser, however, is not qualified to detect such substances and it is recommended that an expert in the field be consulted if this issue is a concern. Lead paint or other potentially hazardous material may affect the value of the property. The Appraiser recommends that the client retain a specialist in this field if desired.

## Closed Sales

All sales utilized in this analysis are closed sales. All sales data were obtained from Multiple Listing Services, the Transfer Directory, County Comps or other sources considered reliable. All information provided by the owner or broker is presumed to be correct as of the date of valuation.

## Marketing Time

The value estimate herein is based on a 30-90 day marketing time.

## Sales More Than One Mile

Because of the limited amount of transfer activity of properties considered comparable in the subject's neighborhood, the analyst utilized sales from competing neighborhoods that would offer a potential buyer an acceptable purchase alternative. The sale(s) considered compare well in terms of condition, functional utility, amenities offered and overall habitat.

## Approaches to Value Conclusion

In reaching the value estimate of the subject property in this assignment, all approaches to value were considered. Most weight was given to the sales approach. The direct sales approach was also supported by the cost approach in which Marshall & Swift Residential Cost Handbook was used. The income approach was considered but was not used because of the lack of reliable income data available and the fact that the subject is a single-family residence.

## Electronic Signatures

Electronic signatures are generated with Day One software using password protection and 128 encryption which meets and exceeds industry standards.

## Supplement to: STATEMENT OF GENERAL LIMITING CONDITIONS and APPRAISER'S CERTIFICATION

This appraisal is made under the following contingencies along with those that appear in the body of the report:

1. It is assumed that all required licenses, consents or other legislative or administrative authority from any local, state or national governmental or private entity or organization have been or can be obtained or renewed for any use on which the value estimate contained in this report is based.

2. This estimate of value does not include any personal property, fixtures, tangible or intangible items that are not real property. If included in the appraisal, the discussion of their contribution will be addressed in this appraisal report.

3. The appraisal report has been prepared in conformity with and is subject to the requirements of the Code of Professional Ethics and Standards of Professional Practice of the Appraisal Institute.

4. Disclosure of the contents of this appraisal report is governed by the Bylaws and Regulations of the Appraisal Institute relating to review by duly authorized representatives.

5. As of the date of this report, Daniel E. Jalbert, MAI has completed the requirements of the continuing education program of the Appraisal Institute.

TEXT ADDENDUM                                                        File No. 05100015

| | |
|---|---|
| Borrower: Amit Mathur | |
| Property Address: 54 Colonial Drive | County: WORCESTER |
| City: SHREWSBURY          State: MA | Zip Code: 01545 |
| Lender: Rubin and Rudman LLP | |

Allied Appraisal Associates of New England, Inc.     ALLIEDAPPRAISAL.COM

6. The appraisal assignment was not based upon a requested minimum valuation, a specific valuation, or the approval of a loan.

7. The Statement of facts contained in this report are true and correct.

8. I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

9. The appraisal and value opinion assumes compliance or absence of the following categories, which require special testing and/or advise. Structural or building integrity, dry rot, lead paint, mold, infestation, mechanical systems, plumbing, electrical, insulation, water or sanitary systems, environmentally toxic agents or adverse code violations. The Appraiser is not responsible for detecting specialized deficiencies in these areas and advises the client to seek an authority in these areas, if verification is needed in these categories. A significant deviation in value could result if unfavorable consequences exist. The appraisal does not guarantee that the property is free of defects.  A professional building inspection is recommended in all real estate decision making.

## SUBJECT PHOTOGRAPH ADDENDUM

05100015

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | Amit Mathur | | | | | | |
| Property Address | 54 Colonial Drive | | | | | | |
| City | SHREWSBURY | County | WORCESTER | State | MA | Zip Code | 01545 |
| Lender | Rubin and Rudman LLP | | | | | | |



FRONT OF
SUBJECT PROPERTY



REAR OF
SUBJECT PROPERTY



STREET SCENE

Allied Appraisal Associates of New England, Inc.

## INTERIOR PHOTOGRAPH ADDENDUM

05100015

| | |
|---|---|
| Borrower | Amit Mathur |
| Property Address | 54 Colonial Drive |
| City | SHREWSBURY     County     WORCESTER     State     MA     Zip Code     01545 |
| Lender | Rubin and Rudman LLP |



Living room



Kitchen



Family Room

Allied Appraisal Associates of New England, Inc.

## ADDITIONAL PHOTOGRAPH ADDENDUM

05100015

| | |
|---|---|
| Borrower | Amit Mathur |
| Property Address | 54 Colonial Drive |
| City | SHREWSBURY |
| County | WORCESTER |
| State | MA |
| Zip Code | 01545 |
| Lender | Rubin and Rudman LLP |



Finished basement



Backyard/Pool area



## COMPARABLES PHOTOGRAPH ADDENDUM

05100015

| | |
|---|---|
| Borrower | Amit Mathur |
| Property Address | 54 Colonial Drive |
| City | SHREWSBURY    County    WORCESTER    State    MA    Zip Code    01545 |
| Lender | Rubin and Rudman LLP |



**COMPARABLE SALE # 1**
16 Bridle Path
Shrewsbury
Date of Sale : 8/30/2005
Sale Price : 908,000
Sq. Ft. : 4,539
$ / Sq. Ft. : 200



**COMPARABLE SALE # 2**
30 Olde Colony Drive
Shrewsbury
Date of Sale : 5/27/2005
Sale Price : 810,000
Sq. Ft. : 3,820
$ / Sq. Ft. : 212



**COMPARABLE SALE # 3**
34 Blackthorne Road
Shrewsbury
Date of Sale : 8/30/2005
Sale Price : 845,000
Sq. Ft. : 4,052
$ / Sq. Ft. : 209

Allied Appraisal Associates of New England, Inc.

## SKETCH ADDENDUM

File No:  05100015

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower / Client | Amit Mathur | | | | | |
| Property Address | 54 Colonial Drive | | | | | |
| City | SHREWSBURY | County | WORCESTER | State | MA | Zip Code | 01545 |
| Lender | Rubin and Rudman LLP | | | | | |



Sketch by Apex IV™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Size | Net Totals |
| GLA1 | First Floor | 1856.00 | 1856.00 |
| GLA2 | Second Floor | 1938.00 | 1938.00 |
| GRR | Garage | 884.00 | 884.00 |
| | | | |
| TOTAL LIVABLE | (rounded) | | 3794 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 3.0 x 16.0 | | 48.00 |
| 16.0 x 44.0 | | 704.00 |
| 12.0 x 42.0 | | 504.00 |
| 6.0 x 24.0 | | 144.00 |
| 19.0 x 24.0 | | 456.00 |
| Second Floor | | |
| 6.0 x 8.0 | | 48.00 |
| 13.0 x 34.0 | | 442.00 |
| 3.0 x 18.0 | | 54.00 |
| 16.0 x 44.0 | | 704.00 |
| 6.0 x 24.0 | | 144.00 |
| 13.0 x 42.0 | | 546.00 |
| 11 Calculations Total (rounded) | | 3794 |

Allied Appraisal Associates of New England, Inc.

LEGAL DESCRIPTION

05100015

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower / Client | Amit Mathur | | | | | |
| Property Address | 54 Colonial Drive | | | | | |
| City | SHREWSBURY | County | WORCESTER | State | MA | Zip Code 01545 |
| Lender | Rubin and Rudman LLP | | | | | |

Return to: Jeffrey Turco, Esq.
65 Sagamore St.
Revere, MA 02151

### QUITCLAIM DEED

I, DARLENE H. PARSEGHIAN OF SREWSBURY, WORCESTER COUNTY, MASSACHUSETTS

FOR CONSIDERATION OF SEVEN HUNDRED EIGHTY-FIVE THOUSAND AND 00/100 ($785,000.00) DOLLARS

GRANTS TO AMIT MATHUR INDIVIDUALLY

OF 54 COLONIAL DRIVE, SHREWSBURY, MA

Bk 31779 Pg: 52 Page: 1 of 2
Recorded: 09/26/2003 03:02 PM

### WITH QUITCLAIM COVENANTS

The land with the buildings thereon in Shrewsbury, Worcester County, Massachusetts, situated on the southerly side of Colonial Drive, further bounded and described as follows:

BEGINNING at the northwesterly corner thereof at a point in the southerly line of Colonial Drive, which point is N. 86 degrees 19' 16" E. four hundred and five (405) feet from land now or formerly of Edward J. Pescaro et ux;

THENCE N. 86 degrees 19' 16" E. by the southerly line of Colonial Drive thirty-five and sixty-four hundredths (35.64) feet to the beginning of a curve in said street line with a radius of four hundred twenty-five (425) feet;

THENCE by said curve to the left and by the southerly lien of Colonial Drive, a distance of eighty-nine and thirty-six hundredths (89.36) feet to a point at lot 5 on the plan hereinafter referred to;

THENCE S 17°66'18"E. by Lot 5 two hundred sixty seven and twenty-five hundredths 267.25 feet to land now or formerly of Commonwealth of Massachusetts known as I-290.

THENCE S. 61 degrees 28' 28" W. by I-290 two hundred fifteen and thirty-five hundredths (215.35) feet to a point at lot 3 on said plan;

THENCE N. 03 degrees 40' 44" W. by lot 3 three hundred thirty –eight and seventy-three hundredths (338.73) feet to Colonial Drive and the point of beginning.

Containing 49,415 sqaure feet of land, more or less, and being shown as lot 4 on plan entitled "Plan of Land 'Colonial farms South' in Shrewsbury, Ma." Dated April 6, 1982 by Moore Survey & Mapping Corp. recorded with Worcester District Registry of Deeds in Plan Book 495, Plan 83.

Being the same premises conveyed to the Grantors by deed dated June 14, 2002 and recorded with the Worcester District Registry of Deeds, Book 26812 Page 235.



**NELSON & O'CONNELL TITLE COMPANY, INC.**
**#16,372-I**

MASSACHUSETTS EXCISE TAX
Worcester District ROD #20 001
Date: 09/26/2003 03:02 PM
Ctrl# 000310 16118 Doc# 00280783
Fee: $3,579.80 Cons: $785,000.00

54 Colonial Dr., Shrewsbury, MA

Allied Appraisal Associates of New England, Inc.

COMPARABLE SALES MAP ADDENDUM

05100015

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | Amit Mathur | | | | | | |
| Property Address | 54 Colonial Drive | | | | | | |
| City | SHREWSBURY | County | | WORCESTER | State | MA | Zip Code 01545 |
| Lender | Rubin and Rudman LLP | | | | | | |



**FLOOD MAP**

05100015

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower/Client | Amit Mathur | | | | | | |
| Property Address | 54 Colonial Drive | | | | | | |
| City | SHREWSBURY | County | WORCESTER | State | MA | Zip Code | 01545 |
| Lender | Rubin and Rudman LLP | | | | | | |



Allied Appraisal Associates of New England, Inc.

File #:  05100015

**DEFINITION OF MARKET VALUE:**    The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undo stimulus.  Implicit in this definition is the consumation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:  (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

* Adjustments to the comparables must be made for special or creative financing or sales concessions.  No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in the market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions.  Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction.  Any adjustment should not be calculated on a mechanical dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**   The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title.  The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantee, express or implied, regarding the determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value.  These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal.  Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presense of hazardous waste, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.  Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct.  The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent.  The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

Allied Appraisal Associates of New England, Inc.

05100015

**APPRAISER'S CERTIFICATION:**    The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than, the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analyses, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form. I certify that, to the best of my knowledge and belief: The statements of fact contained in this report are true and correct. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limited conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

4. I have no present or prospective interest in the property that is the subject of this report, and no personal interest with respect to the parties involved. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. My engagement in this assignment was not contingent upon developing or reporting predetermined results. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have made a personal inspection of the property that is the subject of this report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. No one provided significant professional assistance to the person signing this report.

If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**    If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**    54 Colonial Drive        SHREWSBURY        M    01545

| **APPRAISER:** | **SUPERVISORY APPRAISER** |
|---|---|
| Signature: _Brenda Sherman_ | Signature: _Robt C Tolland_ |
| Name: Brenda Sherman | Name: Robert C Tolland |
| Date Signed: October 12, 2005 | Date Signed: October 12, 2005 |
| State Certification #: | State Certification #: |
| or State License #: 100481            MA | or State License #: 2971            MA |
| Expiration Date of Certification or License: 06/19/2006 | Expiration Date of Certification or License: 10/21/2007 |

Allied Appraisal Associates of New England, Inc.